Commonwealth, Appellant, *v.* Hamilton.

Argued January 13, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Carolyn E. Temin,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Peter A. Galante,* for appellee.

OPINION BY MR. JUSTICE NIX, November 22, 1972:

On November 19, 1965, Rudolph Frazier was found shot to death in the City of Philadelphia. Initial police investigation led authorities to believe that Leonard Curtis Hamilton was the principal suspect and a warrant was obtained for his arrest. Subsequently, Hamilton was found to be incarcerated in Spartansburg, South Carolina, having been charged with robbery and murder in that jurisdiction. On November 30, 1965, Sergeant Francis Brennan of the Philadelphia Police Department went to Spartansburg to interview Hamilton. After obtaining his statement, Sergeant Brennan lodged an arrest detainer against Hamilton charging him with murder.

Nothing further was done in the case until March of 1971 when Hamilton initiated proceedings to remove the detainer. As a result he was brought back to Philadelphia and on July 13, 1971, counsel was appointed to represent him. Following a preliminary hearing, Ham-

ilton was indicted for murder on August 25, 1971, and counsel then filed a petition to dismiss the indictment claiming that the Commonwealth had denied him his constitutional right to a speedy trial. Subsequently, a hearing was held and on September 27, 1971, Hamilton's application to quash the indictment was granted. The Commonwealth appeals.

## I. Constitutional Limitations of the Right to a Speedy Trial

Although it is well settled that the Sixth and Fourteenth Amendments require a state to provide every defendant a speedy trial, *Dickey v. Florida,* 398 U.S. 30 (1970); *Smith v. Hooey,* 393 U.S. 374 (1969); *Klopfer v. North Carolina,* 386 U.S. 213 (1967), the United States Supreme Court has only recently identified with specificity the factors to be balanced in determining whether a particular defendant's right has been denied in this regard. *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972). The considerations are: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the prejudice to the defendant. A balancing of these factors in the instant case causes us to conclude that appellee was denied a speedy trial.

### A. Length of the Delay

The delay in this case must be computed from the time when Commonwealth authorities lodged a detainer against the appellee in November, 1965, to the time when appellee petitioned to dismiss the indictment in September, 1971—a period of almost six years. Such an appalling delay is a convincing indication that appellee's right was violated. At the very least, it is long

enough to trigger an inquiry into the other factors. 407 U.S. at 530, 92 S. Ct. at 2192.

## B. Reason for the Delay

The record is clear that the Commonwealth made no effort to bring appellee to trial for nearly six years after the institution of criminal proceedings, yet no legitimate excuse is offered for this inaction. Commonwealth authorities made no attempt to extradite appellee even though they knew he was incarcerated in South Carolina.[1] Having failed to pursue this procedure, the Commonwealth cannot now offer the fact of incarceration in another jurisdiction as an excuse for the delay.[2]

---

[1] Both South Carolina and Pennsylvania are members of a multi-state agreement on detainers that gives the appropriate officer of a member state authorization "to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available [in order to prosecute the untried charges] . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: . . . And provided, further, that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." Act Authorizing an Interstate Compact Concerning Detainers and for Related Purposes, September 8, 1959, P. L. 829, No. 324, §1, 19 P.S. 1431; and S.C. Code §17-221, Art. IV (Supp. 1971). See also 1965 S.C. Statutes, Vol. 54, No. 592.

[2] We need not here consider the effect of a sending state's refusal of the request to extradite on the obligation of the receiving state to provide a speedy trial, for in the case at bar, there was no effort made by Pennsylvania authorities until 1971. It is interesting to note that when the belated request was finally made there was no difficulty in securing his presence in this state for trial.

## C.  Assertion of the Right to Speedy Trial

Under the *Barker* formulation, an accused's claim of excessive delay is enhanced by evidence that his demands to go to trial were refused. Appellee testified that he did not know of the Pennsylvania detainer until sometime in 1971, and therefore he could hardly be charged for not challenging it earlier.[3] When appellee did learn of the detainer, he petitioned to have it removed. Only then did the Commonwealth proceed to take action to accomplish his return to Pennsylvania. Appellee thus exhibited no reluctance to go to trial; to the contrary, it was at his initiative that the Commonwealth reactivated the case.

## D.  Prejudice to the Accused

Appellee has demonstrated that the delay in trying his case worked to his considerable disadvantage. Most significant is the intervening death of Shirley Goings, a witness who might have offered testimony favorable to the appellee. In addition, appellee has received treatment in a psychiatric hospital and claims to be suffering from loss of memory. He testified that this memory loss has prevented him from recalling the circumstances of the alleged offense, the name of the bartender who

----

[3] The prosecutor did not challenge appellee's testimony in this regard on cross-examination. However, in its brief, the Commonwealth states that, subsequent to the decision in this case, appellee filed a Complaint in the United States District Court for the Eastern District of Pennsylvania under the Civil Rights Act, 42 U.S.C. 1983, and that this Complaint contains allegations indicating that appellee knew of the detainer prior to 1971. We have read the Complaint and find in it nothing to indicate that appellee knew of or appreciated the implications of the detainer before 1971. We therefore see no need to remand this case for a hearing to determine whether appellee's case is weakened because he failed to demand a trial.

could have testified as to his state of intoxication on the date of the crime, and the name of his landlady's son who could have testified as to his emotional state on the date of the offense and the nature of his relationship with the decedent.

We hold, under the standards announced in *Barker*, that the appellee has been denied his right to a speedy trial and affirm the order of the lower court quashing the indictment.

## II. The Pennsylvania Rule

*Barker* represents the minimum standards guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. We also have the mandate of Article I, Section 9 of the Pennsylvania Constitution: "In all criminal prosecutions the accused hath a right to . . . a speedy public trial. . .", and our interpretation of this section need not be limited to the standards set forth to enforce the Federal guarantee. *See*, e.g., *Cooper v. California*, 386 U.S. 58, 62 (1967); *Commonwealth v. Harris*, 429 Pa. 215, 219 n. 2, 239 A. 2d 290, 292 n. 2 (1968). In *Barker*, the Supreme Court declined to establish a presumptive time period within which a state must try a defendant because it felt that such a rule "goes further than the Constitution requires." 407 U.S. at 529, 92 S. Ct. at 2191. At the same time, however, the Court was careful to make it clear that, "[n]othing we have said should be interpreted as disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought." 407 U.S. at 530, n. 29, 92 S. Ct. at 2192, n. 29, 33 L. Ed. 2d at 116, n. 29. In fact, "[m]ost states have enacted statutes setting forth the time within which a defendant must be tried follow-

ing the date when he was arrested, held to answer, committed or indicted. . . ." American Bar Association Project on Minimum Standards for Criminal Justice—Standards Relating to Speedy Trial, Approved Draft, 1968, at 2.[4] We will therefore proceed to examine the right to speedy trial as guaranteed by Article I, Section 9 of the Pennsylvania Constitution.

Pennsylvania has long had a "two term" or "180-day" rule providing for the discharge from imprisonment of any accused who has not been tried the second term after his commitment (within six months for a county of the second class), unless the delay happens on the application of or with the assent of the ac-

---

[4] The states which have such statutes, and the time periods involved, are as follows: Arkansas—by the end of the second court term after the indictment; California—60 days (felonies), 30 days (misdemeanors); Colorado—by the end of the second court term after the accused is committed; Delaware—by the next court term; Florida—90 days (misdemeanor), 180 days (felony), 60 days after demand for trial; Georgia—within one term of a demand; Hawaii—within the term at which accused is indicted; Idaho—within the next term after indictment; Illinois—120 days from custody or bail; Indiana—6 months unless the accused is in custody without counsel, in which case the limit is 60 days; Iowa—60 days; Kansas—by the end of the second full court term; Massachusetts—6 months from indictment; Minnesota—the next court term after indictment; Missouri—second court term after indictment; Montana—6 months from indictment; Nebraska—6 months from indictment; Nevada—60 days after indictment; New Mexico—6 months after indictment; New York—felonies: 90 days (in custody) 6 months (on bail); shorter time periods for misdemeanors and violations; North Carolina—second court term after indictment; North Dakota—within the next court term; Ohio—second court term following indictment; Oklahoma—within the next court term; Rhode Island—6 months; South Carolina—the second court term following the indictment; Tennessee—next court term following indictment; Texas—within the next court term; Utah—within the next court term; Virginia—within three court terms; Washington—60 days after indictment; Wisconsin—90 days after demand (60 for a felony); Wyoming—by the end of the second court term.

cused.[5] Such a discharge from imprisonment does not bar prosecution of the charges and only admits the defendant to bail until the cause is ultimately brought to trial. *Commonwealth v. Clark,* 439 Pa. 192, 196, 266 A. 2d 741, 744 (1970) ; *Commonwealth v. Mitchell,* 153 Pa. Superior Ct. 582, 34 A. 2d 905 (1943), affirmed on the opinion below, 349 Pa. 559, 37 A. 2d 443 (1944). Further the rule is designed to apply only to committed defendants awaiting trial and provides no relief for defendants who are in a bail status but are being denied a speedy trial.

Inordinate delay between the institution of charges and the trial seriously interferes with the defendant's liberty whether he is free on bail or not. The defendant who is free on bail may find that the pending charges "disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and friends." *United States v. Marion,* 404 U.S. 307, 320 (1971). In addition to the general concern that all accused persons be treated according to decent and fair procedures, the Supreme Court in *Barker* noted the following societal interests in providing a speedy trial to defendants *free on bail*: "The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban

---

[5] The statute provides in pertinent part: "If any person shall be committed for treason or felony, or other indictable offense and . . . shall not be indicted and tried the second term, session or court after his or her commitment, or in counties of the second class if such prisoner shall not be indicted and tried within six months after his or her commitment, unless the delay happen on the application or with the assent of the defendant, or upon trial he shall be acquitted, he shall be discharged from imprisonment. . . ." Act of March 31, 1860, P. L. 427, §54; December 1, 1959, P. L. 1671, §1, 19 P.S. 781. We have not considered the Act of June 28, 1957, P. L. 428, §1, 19 P.S. §881, because it is not applicable under the facts of this case. This section applies only to persons serving a sentence within the Commonwealth.

courts which, among other things, enables a defendant to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation." [Footnotes omitted.] *Barker v. Wingo, supra,* 407 U.S. at 519-20, 92 S. Ct. at 2186-87. Thus, the "two term" rule's failure to apply to defendants free on bail renders it wholly inadequate to protect either the interests of the accused or the interests of society.

The rule is also inadequate in that it is effective only when the accused demands his release prior to trial. *Commonwealth v. Halderman,* 299 Pa. 198, 149 A. 476 (1930). Often, the unsophisticated, indigent defendant is without counsel until the trial, and, since the rule is not self-executing, those defendants who most need the protection it was designed to afford are often the ones denied its benefits. For those few defendants who demand release under the rule, the Commonwealth need only bring their cases to trial to avoid its consequences. There is, therefore, no incentive under the "two term" rule for the Commonwealth to guarantee the vast majority of criminal defendants speedy trials.

Finally, at the root of the "two-term" rule's shortcomings is its failure to require dismissal of the charges with prejudice.[6] In *Barker,* the Supreme Court noted that dismissal of the indictment "is the only possible

---

[6] See also Pa. R. Crim. P. 316. While this rule permits the defendant to make an application for dismissal or "such other order as shall be appropriate in the interest of justice," it does not define a reasonable time and leaves to the sound discretion of the court the ultimate determination to be resolved on a case-by-case basis.

remedy" for deprivation of the right to speedy trial. 407 U.S. at 522, 92 S. Ct. at 2188, 33 L. Ed. 2d at 112. The A.B.A. Standards state that, "If following undue delay in going to trial, the prosecution is free to commence prosecution again for the same offense, subject only to the running of the statute of limitations, the right to speedy trial is largely meaningless." A.B.A. Project, supra, §4.1 at 40-41.

Realizing that the "two-term" rule is inadequate to protect either the interests of society or the interests of those whom the Commonwealth accuses of criminal violations, under its supervisory authority this court must consider other alternatives to assure a speedy trial within this Commonwealth. One alternative to the "two-term rule" is to continue to employ a balancing test such as the one sanctioned in *Barker*. See, e.g., *Commonwealth v. Bunter*, 445 Pa. 413, 282 A. 2d 705 (1971); *Commonwealth v. Werner*, 444 Pa. 458, 282 A. 2d 258 (1971); *Commonwealth v. Ditzler*, 443 Pa. 73, 277 A. 2d 336 (1971); *Commonwealth v. Clark*, 443 Pa. 318, 279 A. 2d 41 (1971). Unfortunately, experience has demonstrated that under this type of approach, there has been little success in eliminating criminal backlogs in populous counties where delays and the evils they create are most severe.

A review of the Philadelphia situation is most illustrative of the need for new methods to encourage the speedy disposition of the cases in our criminal courts. On January 1, 1971 there were five thousand, three hundred and fifty-one (5,351) cases available for trial in the criminal section of the Court of Common Pleas for Philadelphia County. During the year of 1971, eleven thousand, seven hundred and ninety (11,790) new cases were received and twelve thousand, five hundred and eighty-two (12,582) cases were disposed of leaving a total of four thousand, five hundred and fifty-

nine (4,559) cases available for trial as of January 1, 1972.[7] This insignificant reduction of the backlog during the reporting period of 792 cases is further depreciated by the fact that the entire gain was accomplished in the minor felony cases. While there was a reduction of one thousand, three hundred and ninety-four (1,394) cases in the minor felony category there was an increase during the same reporting period in the backlog of homicide cases of one hundred and thirty (130), bringing the total as of January 1, 1972 of untried homicide cases to four hundred and eighty-eight (488). During this period the number of untried major felonies was increased by four hundred and forty-two (442) cases.[8]

A review of the records for the first six months of 1972 shows an increase in the backlog of the criminal calendar of one thousand, seventy (1,070) cases.[9] These figures are even more alarming in view of the appointment of 25 additional Common Pleas judges for this county in December 1971. The situation is further compounded because the case flow does not suggest that there is an effective effort to dispose of the earliest indictments first. An analysis of the open criminal cases during the July term 1972 indicated one thousand, one hundred and twenty-five (1,125) cases where the indictments were earlier than January 1972.[10] We have

----

[7] 1971 Annual Report of the Philadelphia Common Pleas & Municipal Courts, at 1. This substantial backlog existed despite recent legislation increasing the jurisdiction of the Municipal Court of Philadelphia County in criminal matters. Act of July 14, 1971, P. L. 224, §1, 17 P.S. §711.18 (Supplement 1972, 1973) ; Pa. R. Crim. P. 6001.

[8] 1971 Annual Report, supra, n. 7, at 14.

[9] Statistical Report of the Common Pleas and Municipal Courts —Second Quarter 1972, at 1.

[10] Statistical Report of the Common Pleas and Municipal Courts —July Term 1972, at 21.

not singled out Philadelphia to suggest that this is the only county in the Commonwealth with a backlog or to suggest that they have made less effort in attempting to remedy the situation. We merely intend to demonstrate the dimensions of the problem and it is to be expected that the problem would be most acute in the largest metropolitan area of the state.

An alternative to a balancing test is a stated time period within which accused persons must be either brought to trial or released from any threat of prosecution.[11] The theory behind this type of rule is that it eliminates the inherent vagueness encompassed in any balancing process and it avoids the necessity of a court determining a violation of this constitutional right on a case-by-case basis. It is also felt that a mandatory time requirement will act as a stimulant to those entrusted with the responsibility of managing court calendars.

Therefore, in order to more effectively protect the right of criminal defendants to a speedy trial and also to help eliminate the backlog in criminal cases in the courts of Pennsylvania we deem it expedient to formulate a rule of criminal procedure fixing a maximum time limit in which individuals accused of crime shall

---

[11] The Florida Supreme Court recently promulgated such a rule in Fla. R. Crim. P. 3.191 (Supp. 1972-73). The Second Circuit has promulgated a similar rule in its "Rules Regarding Prompt Disposition of Criminal Cases, as amended May 24, 1971, Rule 4. See also, Plan for Achieving Prompt Disposition of Criminal Cases in the United States District Court for the Middle District of Florida Rule 2(b). In addition to Florida, twenty of the thirty-three states listed in footnote 5, supra, enforce their time limits by barring subsequent prosecution. Six bar subsequent prosecution in misdeamor cases but not in felony cases; Tennessee gives the trial judge discretion to bar prosecution and South Carolina bars prosecution in all non-capital cases. See also, a recent New York Statute: N.Y.C.P.L. §30.30, Added L. 1972, c. 184, §2.

be brought to trial, in the future, in this Commonwealth. In line with this conclusion, we will immediately refer the matter to the Criminal Procedure Rules Committee for study and recommendation.[12]

The order of the court below granting appellee's motion to quash the indictment is affirmed.

---

[12] This can probably best be accomplished by a redrafting of the present Pa. R. Crim. P. 316.