389 A.2d 1167
COMMONWEALTH of Pennsylvania

v.

Moses W. JONES, Appellant.

Superior Court of Pennsylvania.

Submitted March 14, 1977.
Decided July 12, 1978.

Edward S. Finkelstein, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial, appellant was found guilty of unlawful delivery of a controlled substance,[1] namely heroin. Appellant's motions for a new trial and in arrest of judgment were denied by the lower court. Appellant was sentenced to undergo imprisonment for not less than five nor more than ten years and to pay a fine of $1,000.00 and the costs of prosecution.

Appellant raises several contentions, the first of which is that he is entitled to be discharged because his right to a speedy trial under Pa.R.Crim.P. 1100(a)(2)[2] was violated. Facts necessary for resolution of this issue are the following. On June 27, 1974, a Pennsylvania State Police undercover agent, James Petti, went with a confidential informant to the home of an alleged drug dealer known as "Sidney." The officer spoke briefly with Sidney, and a $150.00 sale was completed. This transaction was part of an extensive narcotics investigation conducted by the Commonwealth in Dauphin County. Sometime after the June transaction, but before the investigation's completion, Petti returned to Sidney's residence and learned that he had moved. The investigation culminated in a January, 1975, raid in which forty-three persons were arrested and charged with violations of

1. The Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended* [35 P.S. § 780–113(a)(30)].

2. Pa.R.Crim.P. 1100(a)(2) mandates that: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974, shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

the narcotics laws. A complaint was filed and an arrest warrant was issued for "Sidney" on January 14, 1975. State police were without additional identification information or knowledge of Sidney's whereabouts.

Petti was transferred from Dauphin County at the conclusion of the investigation, but returned six to eight times attempting to locate Sidney. On these occasions he conducted a surveillance of known drug traffic areas in Harrisburg. He also examined photographs supplied by the Harrisburg Police Department, and during June, 1975, he finally identified a photograph of Sidney. Thereafter, the coordinator of the Commonwealth investigation spoke with a Detective Stevenson, from the Harrisburg Police Department, who was familiar with those involved in the local drug traffic. Stevenson knew Sidney, who was identified as appellant, Moses W. Jones, and he advised the Commonwealth that Jones was then living in Philadelphia. Stevenson agreed to help locate appellant, who occasionally visited the Harrisburg area. Unfortunately, neither Stevenson nor his contacts were able to lead the Commonwealth to appellant. On August 6th, a second criminal complaint, identical to the first, was filed against appellant.

During the week of August 11, 1975, a state trooper, George Wynn, learned from superiors that appellant was being sought. After viewing appellant's photograph, Wynn realized that he had seen Jones in July, 1975, during his investigations in Harrisburg. Wynn learned from an informant that appellant visited the area on weekends. Finally, on August 18, 1975, an arrest was made after the informant saw appellant and contacted Wynn.

On January 2, 1976, appellant moved to quash his indictment for violation of Rule 1100(a)(2). The motion was denied after a hearing on January 21, 1976, and a jury trial was held that day.

■ The first and second complaints lodged against appellant were substantively identical. There was no need for the Commonwealth to file the second complaint. Our point

of reference for assessing appellant's Rule 1100 claim is the date of the filing of the first complaint which was never properly dismissed. See Pa.R.Crim.P. 150. The Commonwealth had 180 days from the filing of the complaint on January 14, 1975, or until July 14, 1975, to bring appellant to trial. Since appellant was not tried until January 21, 1976, the time beyond the prescribed period

> " 'must be either excluded from the computation [of the period, Pa.R.Crim.P. 1100(d)] or justified by an order granting an extension pursuant to the terms of the rule [Pa.R.Crim.P. 1100(c)] if the Commonwealth is to prevail.' " *Commonwealth v. Shelton,* 469 Pa. 8, 14–15, 364 A.2d 694, 697 (1976), *quoting, Commonwealth v. O'Shea,* 465 Pa. 491, 496, 350 A.2d 872, 874 (1976).

The Commonwealth did not file a petition to extend in this case. See Pa.R.Crim.P. 1100(c). Instead it relies upon Pa.R. Crim.P. 1100(d)(1) and asserts that there was full compliance with the Rule.

Rule 1100(d)(1) provides:

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney . . . ."

The Commonwealth maintains that appellant's whereabouts were unknown from the filing of the first complaint until August 18, 1976. If we find that the Commonwealth adequately established appellant's unavailability in the lower court, then appellant's trial on January 21, 1976, 156 days after his whereabouts became known, was well within the prescribed period.

The Comment to Rule 1100 provides in part:

"For purposes of subparagraph (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were un-

known and could not be determined by due diligence
. . . ."

Thus, the question in this case is whether the Commonwealth proved by a preponderance of the evidence that it acted with due diligence in locating and apprehending appellant. *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977). The Commonwealth's efforts to identify and apprehend appellant have already been briefly described. It is appellant's contention that these efforts were inadequate, and that the Commonwealth could have ascertained appellant's identity and whereabouts much earlier than it did.

Appellant attempted to prove his availability by introducing evidence that he was apprehended on March 20, 1975, in Harrisburg, on other drug related charges. That arrest resulted from a separate investigation conducted by the Pennsylvania Bureau of Drug Control, assisted by the Harrisburg Police Department. Appellant was arraigned on April 30, 1975, and was in court in May, 1975. In addition, he received mail from the district attorney's office in June or July. Appellant elicited testimony showing that he was well known to a Harrisburg police detective who could easily have located him. Appellant also showed that he drove a very pretentious automobile in the city's crime area. The defense showed that a deputy district attorney of Dauphin County was familiar with appellant's nickname, "Philadelphia Sidney," and his automobile, but was not aware of appellant's true name and address until after the city's March 20th raid.

In *Commonwealth v. Mitchell, supra,* the Commonwealth asserted the appellant's unavailability as cause for the commencement of trial after the expiration of the 180 day period. To refute the Commonwealth's assertion that it could not locate Mitchell, the appellant argued that he received public assistance benefits and that he was employed under his own name. The appellant argued that the Commonwealth could have located him through one of these associations. The record did not reflect, however, that the police department knew either that appellant received assistance or that he was employed. The court declared:

"It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. *Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.*" *Id.*, 472 Pa. at 566, 372 A.2d at 832 (emphasis added).

In *Mitchell*, the police visited a known address on several occasions and circulated in the police department a photograph of the appellant. The supreme court found that those steps adequately demonstrated due diligence.

In the instant case, Officer Petti's brief contact with appellant at the time of the sale afforded a very general description of appellant and knowledge of appellant's first name. Petti conducted numerous searches for appellant and finally identified him in a photograph. Supplied with his full name, the state police then collaborated with the Harrisburg Police Department, which cooperative effort still did not lead them to appellant. Finally, by circulating appellant's photograph to other state troopers, a successful contact was made and appellant was apprehended. Under the circumstances, we find that the Commonwealth exercised due diligence in locating appellant. Although the police could have pursued other avenues to locate appellant, that is not the controlling factor. It is simply not required that the Commonwealth exhaust every conceivable method of locating a defendant. Rather, reasonable steps must be taken.

The time from the filing of the first complaint on January 14, 1975, to August 18, 1975, when appellant's whereabouts became known and he was apprehended, is excludable from the computation of the 180 days under Pa.R.Crim.P. 1100(d)(1). Only 156 days elapsed from August 18, 1975, to the day of trial, January 21, 1976. Appellant was therefore properly tried within the 180 day period.

■ Appellant's second contention is that the Commonwealth violated Pa.R.Crim.P. 21 in that the criminal complaint was not issued by the district justice within whose jurisdiction the crime occurred. This assertion is of no merit because there was a January 1975, court order transferring jurisdiction over the series of drug cases arising from the January raid to the district magistrate who issued the complaint against appellant. *See* Pa.R.Crim.P. 21(d).

■ Appellant's final assertion is that the trial court erred in its instruction to the jury regarding the Commonwealth's failure to produce testimony of the informer, who was identified at trial.[3] It is well established that:

> " '[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. (citations omitted).' " *Commonwealth v. Whyatt,* 235 Pa.Super 211, 218, 340 A.2d 871, 875 (1975), *quoting, Commonwealth v. Jones,* 455 Pa. 488, 495, 317 A.2d 233, 237 (1974).

In the instant case, the lower court's instruction on this inference concluded:

> "However, where there is satisfactory explanation as to why the witness is not here, the inference would not properly arise. I don't think there was any direct testimony as to the whereabouts or why Mr. Shimp was not here and without that you could infer that his testimony would be unfavorable, *unless you would find in the circumstanc-*

---

**3.** We note that appellant failed to comply with Pa.R.A.P. 2115, which mandates that the statement of questions in an appellate brief must contain all issues upon which the appellant predicates entitlement to relief. Appellant's statement of questions only refers to his Rule 1100 argument. In briefing the Rule 1100 issue, appellant did, however improperly, address the merits of the trial court's alleged erroneous instruction. The issue was properly preserved below, argued in post-trial motions, and addressed in the lower court's opinion. We therefore address the merits.

*es that you would not expect him to be here because of the nature of the case."* (NT 99–100) (emphasis added). Appellant's counsel objected to the emphasized portion of the charge, and the judge explained:

"I said, I believe, that although there was no direct testimony as to the Commonwealth's failure to produce the witness, *I think the jury could properly consider whether there would be any other reason why the Commonwealth did not produce him, because of the nature of this case,* and I stand by that statement." (NT 101) (emphasis added).

It is true that the inference is a permissible rather than a mandatory one. In the absence of any testimony explaining the informant's absence, however, it would be totally improper for the jury to speculate on possible explanations. This is, in effect, what the court's charge encouraged. Once the judge, in the exercise of his discretion, opted to give the instruction on the informant's absence, appellant was entitled to the full benefit of the inference. .Because of the court's charge and explanation, appellant did not enjoy that benefit. Thus a new trial is required.

Judgment of sentence is reversed and a new trial is granted.

VAN der VOORT, J., files a concurring and dissenting opinion in which JACOBS, President Judge, joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

VAN der VOORT, Judge, concurring and dissenting:

I concur in the decision in this case relating to the Rule 1100 and jurisdiction of the Magistrate issues, but I respectfully dissent to the decision relating to the charge of the court. I would not grant a new trial but would affirm the action of the court below.

JACOBS, President Judge, joins in this concurring and dissenting opinion.