404 A.2d 1320

**COMMONWEALTH of Pennsylvania**

**v.**

**Tyrone COLLINS, Appellant.**

Superior Court of Pennsylvania.

Argued April 18, 1978.

Decided May 23, 1979.

341

Lester G. Nauhaus, Assistant Public Defender, Chief, Appellate Division, Pittsburgh, for appellant.

Robert E. Colville, District Attorney, Pittsburgh, submitted a brief on behalf of Com., appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

This appeal arises from denial in the court below of appellant's motion in arrest of judgment and for a new trial following his conviction by a jury of aggravated assault[1] and recklessly endangering another person.[2]  The sole issue on appeal is the propriety of the lower court's denial of appellant's pre-trial motion to dismiss based on the Commonwealth's alleged failure to comply with Pa.R.Crim.P. 1100(a)(2).[3]  For the reasons set forth herein, we are compelled to agree that the court below erred, and we accordingly vacate the judgment of sentence and discharge appellant.

[1]  18 Pa.C.S. § 2702.

[2]  18 Pa.C.S. § 2705.  The court below sustained appellant's demurrer to a robbery charge.  18 Pa.C.S. § 3701.

[3]  Pa.R.Crim.P. 1100(a)(2) mandates that: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

The complaint in this case was filed in Allegheny County on December 5, 1975, however, appellant was not arrested until May 5, 1976, in Philadelphia. Under Pa.R.Crim.P. 1100(a)(2), the Commonwealth had one hundred eighty days from December 5, 1975, or until June 2, 1976, to bring appellant to trial. On July 19, 1976, appellant filed a motion to dismiss under Pa.R.Crim.P. 1100(f). Arguing that appellant had been unavailable until his arrest, the Commonwealth prevailed upon the court below to conclude that seventy-seven days were excludable from the mandatory period, and that appellant's motion should be dismissed. To the contrary, our review of the Rule 1100 proceedings convinces us that the Commonwealth did not establish the requisite due diligence in attempting to locate appellant, which would entitle it to the exclusion.[4]

Rule 1100(d) states in part that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney; . . ." The Comments to the rule, although not binding upon this court, have been utilized by us as a source of guidance. *Commonwealth v. Byrd*, 250 Pa.Super. 250, 378 A.2d 931 (1977). The Comment to Rule 1100 provides in part that

"For purposes of subparagraph (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; . . ."

While cases in this area do not abound, several decisions give us guidance in evaluating the prosecution's due diligence in locating a defendant. In *Commonwealth v. Mitch-*

---

4. The post-trial motions judge declined, erroneously, to review appellant's Rule 1100 argument. Judge Ridge, who ruled on the pre-trial motion to dismiss, did not author findings of fact. However, we are aided in our resolution of this issue by the comprehensive record which Judge Ridge made exemplary efforts to supply to us.

*ell*, 472 Pa. 553, 372 A.2d 826 (1977), the Commonwealth likewise sought an exclusion under Pa.R.Crim.P. 1100(d)(1) of the time between the complaint's filing and the defendant's arrest. There, the supreme court observed initially that "the Commonwealth has the burden of proving the requisites of Section (d) in order to avail itself of an exclusion and must do so by a preponderance of the evidence." *Id.*, 472 Pa. at 564, 372 A.2d at 831. In *Mitchell*, the appellant moved several times after commission of the crime, and he assumed an alias. The Commonwealth presented testimony of the detective in charge of the case who had visited some six to eight times Mitchell's mother's residence, where the appellant formerly resided. The officer acquired that address through prior arrest records. The officer testified that the appellant's mother gave a general indication of his wife's residence, but that the exact address could not be learned in spite of the officer's visits to the locale. The officer also spoke with Mitchell's parole officer, who merely indicated that the appellant might surrender himself. Photographs were also distributed throughout the Philadelphia Police Department.

It was Mitchell's contention that this was insufficient to establish due diligence. He maintained that the prosecution could have located him because he received public assistance benefits and was for a time employed in his own name. The court determined that the Commonwealth had exercised due diligence, particularly when it was clear that Mitchell was actively concealing his whereabouts.

> "It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful." *Commonwealth v. Mitchell, supra*, 472 Pa. at 566, 372 A.2d at 832.

Since *Mitchell*, this court has decided several other cases instructive on this issue. *E. g., Commonwealth v. Jones*, 256

Pa.Super. 366, 389 A.2d 1167 (1978); *Commonwealth v. Martofel*, 248 Pa.Super. 206, 375 A.2d 60 (1977).

In *Martofel*, police went to the appellant's place of employment to learn his address. They learned that he no longer lived at the address given, however, and proceeded to his sister's address. She had no knowledge of the appellant's whereabouts, but the police made numerous return trips to both addresses for the following month or so. The police asked that his employer inform them if the appellant appeared to collect back wages. Copies of the arrest warrant were sent to several local police departments. Martofel was ultimately arrested in a neighboring county when stopped for reckless driving. Former President Judge Jacobs, finding that the Commonwealth had satisfied the due diligence standard, said for a unanimous court:·

"While the . . . [p]olice did not pursue every conceivable method by which they might have ascertained appellant's whereabouts, we are convinced that taking into consideration the manpower and investigatory means at their disposal, the police made a reasonable effort to find appellant. . . . To require already overtaxed police forces to expend a disproportionate amount of effort on locating an accused who has fled the area would deprive citizens of the necessary police protection." *Id.,* 248 Pa.Super. at 209, 375 A.2d at 61.

Again, in *Commonwealth v. Jones, supra,* we found that the record reflected the Commonwealth's required due diligence in apprehending the appellant. In *Jones,* an undercover narcotics sale was consummated. The police knew the appellant by a first name only. They went to his home, but he had moved. Known drug traffic areas in Harrisburg were repeatedly visited by the purchasing state trooper. In addition, photographs were obtained from the local police department. Finally, an informant aided a second state trooper in locating the appellant. Jones suggested numerous additional avenues of search that the prosecution could have pursued, but we declined to find the Commonwealth's failure to have proceeded by the appellant's suggested approach a lack of due diligence. We found that:

"Officer Petti's brief contact with appellant at the time of the sale afforded a very general description of appellant and knowledge of appellant's first name. Petti conducted numerous searches for appellant and finally identified him in a photograph. Supplied with his full name, the state police then collaborated with the Harrisburg Police Department, which cooperative effort still did not lead them to appellant. Finally, by circulating appellant's photograph to other state troopers, a successful contact was made and appellant was apprehended. Under the circumstances, we find that the Commonwealth exercised due diligence in locating appellant. Although the police could have pursued other avenues to locate appellant, that is not the controlling factor. It is simply not required that the Commonwealth exhaust every conceivable method of locating a defendant. Rather, reasonable steps must be taken." *Commonwealth v. Jones, supra* 256 Pa.Super. at 373, 389 A.2d at 1170.

These cases contrast sharply with the one presently before us. The salient facts are these. Detective Robert Ieraci of Pittsburgh's robbery squad testified to the Commonwealth's efforts to locate appellant. On the day following the robbery, Officer Ieraci went to the area of the occurrence. There, some "people that loafed on the street [and] that knew the defendant" told the officer that the defendant had left town the night of the robbery. Officer Ieraci was also given several addresses, one of which was appellant's sister's and one his mother's. There was no response at either home, and the officer testified that no follow-up was undertaken. Finally, Mr. Joseph Snare, a state parole officer, got in touch with the robbery squad sometime in February 1977. Mr. Snare had the same two Pittsburgh addresses and a Windsor Street address of appellant's aunt in Philadelphia. In Mr. Snare's company, Detective Ieraci and his partner returned to appellant's mother's address. The trio spoke with appellant's mother who revealed that appellant was at the Philadelphia address and that, although he had just been home to Pittsburgh, had left the area again fearing for his

life. Officer Ieraci left his card, telling her that she should tell appellant when he next came home to get in touch with the police, and that they would protect him. Then, Officer Ieraci testified, "We waited a while on that, hoping that he would talk to her and get in touch with us." (N.T. 31–32). In April, the Philadelphia Police Department was contacted and given the Windsor Street address. On request, the Pittsburgh Police Department sent a photograph, physical description, and copy of the warrant. On May 5, 1977, appellant was arrested in Philadelphia.

Appellant contends that both his county probation officer, Tom Dunlan, and his state parole officer, John Sawyer, were contacted by him in early January and that both knew he was in Philadelphia and had the Windsor Street address where he was finally arrested.

Although appellant, known as "Philly Dog," had a police record and was on probation, the record reflects that no effort was made to secure information or cooperation of the probation and parole offices. No effort was made to secure cooperation of out-of-county police departments, even though the prosecution was aware from the start that appellant had fled after the criminal episode. Even after being informed by the state parole officer of the Philadelphia address, and the corroboration of appellant's presence there by his mother in February, Pittsburgh officials made no contact with Philadelphia authorities until two months later.

Although our focus in evaluating the Commonwealth's efforts to locate an accused must be steps taken by the prosecution rather than possibly meritorious efforts not undertaken, there simply is no effort reflected on the record before us. A single unsuccessful visit to the homes of two relatives, followed a month and one-half later by dropping one's card at the accused's mother's residence with a request to be contacted should the accused come calling, falls far short of due diligence. The Commonwealth in fact made no effort until the end of April, when Philadelphia police were finally contacted.

Because appellant filed the motion to dismiss under Rule 1100(f) on the 227th day, and the Commonwealth was neither entitled to an exclusion nor did it successfully request an extension before that time, appellant's motion was timely and should properly have been granted.[5]

Judgment of sentence vacated and appellant discharged.

VAN der VOORT, J., dissents.

HESTER, J., files a dissenting statement.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

HESTER, Judge, dissenting:

I dissent. The holding of the majority places an unjustified burden upon the Commonwealth.

---

**5.** Appellee contends that even if this court finds that due diligence was not established, a waiver executed by appellant on September 8, 1976, precludes the relief he now requests. Our examination of that waiver satisfies us that it was of limited duration, applying only to the continuance from September 8 to September 14, 1976.