440 A.2d 619

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Eleanor DORSEY.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1981.

Filed Jan. 29, 1982.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellee.

Before SPAETH, WIEAND and JOHNSON, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order discharging appellee under Rule 1100(f). The lower court held that the police had not exercised due diligence in looking for appellee, and that the period between the offense and appellee's arrest should therefore not be excluded from the period within which appellee had to be tried. We reverse.

On August 12, 1977, appellee stabbed Eugenia Scott. On August 27, 1977, Detective Ryan of the Philadelphia Police filed a complaint against appellee and obtained a warrant for her arrest. She was not arrested, however, until February 16, 1978.

The original Rule 1100 run date—180 days from the date the complaint was filed—was February 23, 1978. On April 4, 1978, appellee, who had not yet been tried, moved for a discharge under Rule 1100. The pre-trial motions court denied the motion, finding that despite due diligence, the police had been unable to find appellee before February 16, 1978, and that the period between the date the complaint was filed and the date of appellee's arrest should therefore be excluded as time during which appellee was unavailable. See Pa.R.Crim.P. 1100(d)(1).

On May 23, 1979, appellee was tried and found guilty of aggravated assault and possessing an instrument of crime. By timely post-verdict motion, appellee again moved for a discharge. The lower court granted the motion and discharged appellee, finding, contrary to the pre-trial motions court, that the police did not exercise due diligence in trying to find appellee.

■ The Commonwealth had the burden of proving by a preponderance of the evidence that the police exercised due diligence in trying to find appellee. *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. Jones*, 256 Pa.Superior Ct. 366, 389 A.2d 1167 (1978). The Commonwealth's evidence of diligence consisted entirely of the testimony of Detective Ryan. On direct examination, the detective said:

On August 28 I again went to 5310 Priscilla [appellee's address]. There was no answer at the house. On 9–30 I went to the house. I was let into the house by her husband and by a 15 year old female who was her daughter and they stated that Eleanor Dorsey lived there but she wasn't home. I searched the house. She wasn't at home. On 10–23 I again went out to the house. There was no answer. I then entered Eleanor Dorsey's name

into PCIC [Pennsylvania Crime Information Center] as being wanted for an aggravated assault and there was a warrant outstanding for her. I again went to the house on 12–12. He[r] daughter was home, gained entrance. Eleanor Dorsey wasn't home and again on 1–23. Now, sometime around 1–23 or a little bit after I spoke to an ACT [Anti-Crime Team] team policeman [sic] Speeler and Holmes . . . and I informed them that I had a warrant out-standing for Eleanor Dorsey. I also gave them a police department photograph I had of this defendant and on February 16 the[y] locked her up on Germantown Avenue.

N.T. 4/21/78 at 4–5.

On cross-examination the detective acknowledged that he had not found out where appellee worked, had not set up any kind of stakeout at her house, and had not checked to see if she was on the welfare rolls. *Id.* at 5. In finding that this testimony did not establish due diligence, the lower court said:

> The detective was able to ascertain that defendant did, in fact, live at the residence and was working. The detective made no effort to determine where defendant worked, what time she would be home, or leave a message that Defendant contact the detective. The evidence clearly shows that no effort other than visiting the home was made by the detective. The record failed to disclose that the officer told anyone at [the] home of Defendant that there was a warrant outstanding for her arrest.
>
> R. 9a.

In *Commonwealth v. Mitchell, supra,* 472 Pa. at 566, 372 A.2d at 832, the Supreme Court said:

> It is not the function of our courts to second-guess the police methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.

*See also, Commonwealth v. Hinton,* 269 Pa.Superior Ct. 43, 409 A.2d 54 (1979); *Commonwealth v. Jones,* 256 Pa.Superior Ct. 366, 389 A.2d 1167 (1978). Here, "the information available to the police" included knowledge of where appellee's family, and therefore presumably appellee herself, lived. Appellee argues, however, that the police should have had more information available than only her address:

> [A]lthough the detective spoke with appellee's husband one month after the issuance of the complaint, he never asked if appellee was working or receiving public assistance, and apparently never asked when appellee would be home nor did he inform her husband that he had a warrant for her arrest.

Brief for Appellee at 11.

■ This argument misstates the issue we must decide. In considering "the information available to the police," we do not ask whether the police had available all the information they *might* have had available—in other words, whether they did all they *could* have done. Instead, we ask whether what they *did* do was enough to constitute due diligence.

■ Here, no doubt Detective Ryan *could* have questioned appellee's husband, and told him that a warrant had been issued for appellee's arrest. But the failure to do so does not demonstrate lack of due diligence. The detective may have believed that appellee's husband was not a reliable source of information; or that the husband would be more inclined to frustrate efforts to find appellee than to assist them, and that mentioning the warrant would lead to appellee's flight.

Nor are we willing to say that the detective's failure to set up a stakeout at appellee's house, or to check to see if appellee was on the welfare rolls—as it was implied on cross-examination he should have done—demonstrates lack of due diligence. In *Commonwealth v. Mitchell, supra,* the police received a tip in October that the defendant was receiving public assistance, and arrested him when he picked up his check. The police had been looking for the defendant

since July. The defendant argued that if the police had exercised due diligence, they would have checked with the Department of Public Assistance right away; then they would have learned that he had started to receive public assistance in July, and they could have arrested him much earlier. Rejecting this argument, the Supreme Court said:

> The error in such reasoning is that nothing in the record indicates that the police had any indication prior to [the October tip] that Mitchell was obtaining public assistance. 472 Pa. at 565, 372 A.2d at 832.

Similarly, there is no evidence here indicating that the police knew appellee was on the welfare rolls.

As we have considered this case we have found it not surprising that two judges of the lower court—the pre-trial motions judge and the post-verdict motions judge—differed, one finding due diligence, the other not. Without question, the police might have done more by way of trying to find appellee, and they might have done some of what they did do, in particular, circulating a photograph of appellee, sooner. One may have some confidence that if the crime had been of a different, and more spectacular, sort, it would not have taken the police so long to find appellee. Having said this much, however, we recognize that the police cannot investigate every crime with the promptness and thoroughness that would be desirable. Too many crimes are committed. The police must therefore make choices, devoting more attention to some crimes than to others, and forgoing some lines of inquiry that they would pursue if they had more resources.

Thus, when asked to decide whether the police have acted with due diligence, a court must engage in a balancing process, which may become quite awkward. On the one hand, the court should approach its decision with sympathy for the police. For as the Supreme Court has said in *Commonwealth v. Mitchell, supra,* 472 Pa. at 561, 372 A.2d at 830: "The police can be expected to act with due diligence in locating and apprehending an accused in all situations because it is their duty to do so as public officials." The court

should therefore take into account the limited resources available to the police, and should be wary of saying that the police should have done something that they did not do. On the other hand, the police, like other public officials, do not always do their duty. Furthermore, the interest of an accused in receiving a prompt trial is a precious interest, which it is the court's responsibility to protect. *See Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972); *see also Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). If it is not the function of the courts to "second-guess" the police, neither is it their function to suspend their critical faculties. If the courts were always to make excuses for the police, the requirement of "due diligence" would have no force at all.

Here, striking this balance as best we can, we have concluded that the police acted with due diligence. The police went to appellee's house five times over a period of about six months. After the third time, they entered appellee's name in the Pennsylvania Crime Center Computer, and after the fifth time, distributed appellee's photograph. Thus, while perhaps they were slow, nevertheless, the police persisted in their efforts to find appellee by repeatedly checking at the place where she was likely to be. Their efforts were, in a rough way, equivalent to efforts that we have found in other cases constituted due diligence. *Commonwealth v. McDermott*, 280 Pa.Superior Ct. 535, 421 A.2d 851 (1980) (police checked with defendant's employer, at his home, and in areas known to be frequented by defendant, over nine month period; circulated photographs; and entered defendant's name on National Crime Information Center computer); *Commonwealth v. Jones*, 256 Pa.Superior Ct. 366, 389 A.2d 1167 (1978) (defendant wanted for participation in narcotics ring; undercover officer conducted surveillance, on six or eight occasions, of known drug areas in defendant's community, and examined photographs supplied by local police). In *Commonwealth v. Collins*, 266 Pa.Superior Ct. 340, 404 A.2d 1320 (1979), we found a lack of due diligence in apprehending the defendant. There, however,

the police made "[a] single unsuccessful visit to the homes of two relatives, followed a month and a half later by [the officer leaving his] card at the accused's mother's residence with a request to be contacted should the accused come calling . . . ." *Id.*, 266 Pa.Superior at 404 A.2d at 1323. In addition, the police made no effort to use an abundance of available information:

Although appellant, known as "Philly Dog," had a police record and was on probation, the record reflects that no effort was made to secure information or cooperation of the probation and parole offices. No effort was made to secure cooperation of out-of-county police departments, even though the prosecution was aware from the start that appellant had fled after the criminal episode. Even after being informed by the state parole officer of the Philadelphia address, and the corroboration of appellant's presence there by his mother in February, Pittsburgh officials made no contact with Philadelphia authorities until two months later.

*Id.*, 266 Pa.Superior at 346, 404 A.2d at 1323.

The order granting appellee's motion in arrest of judgment is hereby reversed, the convictions are reinstated, and the case is remanded to the lower court for sentencing.