475 A.2d 805

COMMONWEALTH of Pennsylvania, Appellant,

v.

Frank WINN.

Superior Court of Pennsylvania.

Argued May 13, 1983.

Filed April 19, 1984.

---

Garold E. Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Peter Rosalsky, Assistant Public Defender, Philadelphia, for appellee.

Before WICKERSHAM, WATKINS and MONTGOMERY, JJ.

WICKERSHAM, Judge:

On April 14, 1981, Judge Richard B. Klein, Philadelphia Court of Common Pleas, presided over a Rule 1100 hearing, and denied the Commonwealth's "Petition for Extension under Rule 1100," as being untimely filed and granted appellee's "Motion to Dismiss under Rule 1100." The Commonwealth has appealed. We reverse.

A review of the entries in the Quarter Session file reflects the following chronology:

9/18/80: criminal complaint filed.

12/15/80: appellee arrested. Preliminary hearing scheduled for 12/24/80.

12/24/80: complainant failed to appear. Preliminary hearing continued to 1/7/81.

1/7/81: complainant failed to appear. Must be tried Commonwealth. Preliminary hearing continued to 1/22/81.

1/22/81: complainant failed to appear. Must be tried. Preliminary hearing continued to 2/5/81.

2/5/81: line-up ordered.

2/26/81: preliminary hearing held. Appellee held for court.

3/17/81: arraignment

[*3/17/81: Rule 1100 Run Date*]

3/31/81: Commonwealth's Petition to Extend under Rule 1100 filed.

4/1/81: Pre-trial conference. Rule 1100 hearing scheduled for 4/14/81.

4/14/81: Appellee's answer and Motion to Dismiss under Rule 1100 filed.

Motion to Dismiss under Rule 1100: Granted.

A Rule 1100 evidentiary hearing was held on April 14, 1981. As the Rule ran on March 17, 1981 and the Commonwealth's Extension Petition was not filed until March 31, Rule 1100(c) and (e) required dismissal of charges unless the Commonwealth could establish that at least two weeks were "excludable" under Rule 1100(d) Pa.R.Crim.P. The

position advanced by the Commonwealth, and the evidence produced at the Rule 1100 hearing, involved the Commonwealth's contention that the delay between the filing of the complaint (September 18, 1980) and the arrest of appellee (December 15, 1980) was excludable time. After hearing the testimony of the assigned detective, Judge Klein found that his efforts were "so minimal" as to demand a finding that due diligence was lacking, and that the detective had ignored several possibilities which offered some hope of success in arresting appellee.

As a result of this Pa.R.Crim.P. 1100 discharge, defendant, Frank Winn, has been discharged from all criminal liability for twice allegedly raping a seventy-two year old widow, Mrs. Frances Taylor. It is charged here that on the night of September 7, 1980, defendant broke into Mrs. Taylor's apartment, while she lay resting on her bed. He first demanded money; when Mrs. Taylor protested that she had none, he struck her in the eye with his clenched fist, shoved her onto her bed, pinned her down with a choke hold over her neck and face, and raped her. Warning that "I will be back," defendant left the apartment for a few minutes. Upon his return he threatened the terrorized and elderly widow that: "They are going to find you dead right up here in this room." He then grabbed her bra and tore it off, pulled off his victim's slip, again threw her on the bed, and raped her a second time. Five or ten minutes later defendant, sated, left his traumatized victim lying in pain.

On April 14, 1981, the Honorable Richard A. Klein discharged defendant under Rule 1100 because he felt the police did not exercise due diligence in apprehending defendant who evaded police for eighty-eight (88) days after the issuance of a warrant for his arrest. Although Judge Klein clearly credited the assigned detective's uncontradicted testimony, presented by the Commonwealth at the Rule 1100 hearing, he held that the police efforts to locate defendant were, as a matter of law, insufficient to sustain a finding of pre-arrest due diligence. The Commonwealth's credited evidence established that on September 7, 1980, Philadel-

phia Police Detective Finnegan took Mrs. Taylor's complaint and learned from her that Mrs. Taylor's landlady's nephew, Frank Winn, was the rapist. However, defendant's aunt, who was told that defendant was wanted by the police, gave Detective Finnegan an incorrect address for defendant and a misspelling of his last name. Detective Finnegan went to the given address, discovered that no one by defendant's name lived there, and on September 18, 1980, returned to defendant's aunt's residence. At that time, the aunt's common law husband provided him with the correct information. On that day, Finnegan obtained an arrest warrant for defendant at the correct address and, at 10:00 p.m., went to defendant's home, but received no answer. Also on that day, the detective entered defendant's name into the PCIC (Philadelphia Crime Information Center) computer, which circulates throughout the state and city that defendant is wanted in Pennsylvania. Early in October of 1980 Detective Finnegan went to defendant's home, but again received no answer. He also re-contacted defendant's aunt, who said she had not seen him since the rape incident. Finally, on November 11, 1980, defendant's mother answered the door and told the detective that although defendant did live there, he was not home at that moment. The detective gave the mother his name and telephone number, and she told him that when defendant came in he would telephone the detective. Defendant did not do so. The detective continued his efforts to apprehend defendant by entering his name into the NCIC (National Crime Information Center) computer on November 11, 1980. He also circulated photographs of defendant among the police officers in defendant's police district, and learned from an Officer Thompson that defendant "hung out" at a poolroom at 10th and Tioga Streets. Detective Finnegan checked the poolroom without success, as did Officer Thompson on a later date. Next, on November 13, 1980, Detective Finnegan was contacted by defendant's probation officer and the detective informed him that there was a warrant outstanding for defendant's arrest. The probation officer told the detective that defendant would turn himself in to South Detectives

Division but defendant failed to do so. Finally, on December 15, 1980, Detective Finnegan and Officer Thompson arrested defendant at his home. The first Common Pleas Court listing of defendant's case was on April 14, 1981, hearing on the Commonwealth's Rule 1100 extension petition, which had been filed on March 31, 1981, thirteen (13) days after the Rule 1100 "mechanical rundate". After hearing the Commonwealth's uncontradicted evidence, Judge Klein concluded that the police were not duly diligent in trying to find defendant during the eighty-eight (88) days between the lodging of the complaint and defendant's arrest. He therefore discharged defendant on the ground that, since the pre-arrest delay was not excludable time under Pa.R.Crim.P. 1100, the Commonwealth's petition was not timely filed.[1]

This case is controlled by *Commonwealth v. Dorsey*, 294 Pa.Super. 584, 440 A.2d 619 (1982), in which a panel of our court also considered an appeal by the Commonwealth from an order discharging appellee under Rule 1100(f). The lower court had held that the police had not exercised due diligence in looking for appellee, and that the period between the offense and appellee's arrest should therefore not be excluded from the period within which appellee had to be tried. We reversed and speaking through Judge (now President Judge) Spaeth we said:

> Without question, the police might have done more by way of trying to find appellee, and they might have done some of what they did do, in particular, circulating a photograph of appellee, sooner. One may have some confidence that if the crime had been of a different, and more spectacular, sort, it would not have taken the police

---

1. In this appeal appellant raises the following issue:

    Was defendant entitled to an absolute discharge from criminal liability under Pa.R.Crim.P. 1100, as a result of pre-arrest delay, although police made repeated efforts to arrest him at his home and at the pool hall he frequented, entered his name as wanted in the Philadelphia Crime Information Center, and distributed his police photograph to street policemen in his district?

    Brief for Appellant at 2.

so long to find appellee. Having said this much, however, we recognize that the police cannot investigate every crime with the promptness and thoroughness that would be desirable. Too many crimes are committed. The police must therefore make choices, devoting more attention to some crimes than to others, and forgoing some lines of inquiry that they would pursue if they had more resources.

Thus, when asked to decide whether the police have acted with due diligence, a court must engage in a balancing process, which may become quite awkward. On the one hand, the court should approach its decision with sympathy for the police. For as the Supreme Court has said in *Commonwealth v. Mitchell, supra,* 472 Pa. at 561, 372 A.2d at 830: "The police can be expected to act with due diligence in locating and apprehending an accused in all situations because it is their duty to do so as public officials." The court should therefore take into account the limited resources available to the police, and should be wary of saying that the police should have done something that they did not do. On the other hand, the police, like other public officials, do not always do their duty. Furthermore, the interest of an accused in receiving a prompt trial is a precious interest, which it is the court's responsibility to protect. *See Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972); *see also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). If it is not the function of the courts to "second-guess" the police, neither is it their function to suspend their critical faculties. If the courts were always to make excuses for the police, the requirement of "due diligence" would have no force at all.

Here, striking this balance as best we can, we have concluded that the police acted with due diligence. The police went to appellee's house five times over a period of about six months. After the third time, they entered appellee's name in the Pennsylvania Crime Center Com-

puter, and after the fifth time, distributed appellee's photograph. Thus, while perhaps they were slow, nevertheless, the police persisted in their efforts to find appellee by repeatedly checking at the place where she was likely to be. Their efforts were, in a rough way, equivalent to efforts that we have found in other cases constituted due diligence. *Commonwealth v. McDermott,* 280 Pa.Super. 535, 421 A.2d 851 (1980) (police checked with defendant's employer, at his home, and in areas known to be frequented by defendant, over nine month period; circulated photographs; and entered defendant's name on National Crime Information Center computer); *Commonwealth v. Jones,* 256 Pa.Super. 366, 389 A.2d 1167 (1978) (defendant wanted for participation in narcotics ring; undercover officer conducted surveillance, on six or eight occasions, of known drug areas in defendant's community, and examined photographs supplied by local police). In *Commonwealth v. Collins,* 266 Pa.Super. 340, 404 A.2d 1320 (1979), we found a lack of due diligence in apprehending the defendant. There, however, the police made "[a] single unsuccessful visit to the homes of two relatives, followed a month and a half later by [the officer leaving his] card at the accused's mother's residence with a request to be contacted should the accused come calling...." *Id.,* 266 Pa.Superior Ct. at 346, 404 A.2d at 1323.

*Id.,* 294 Pa.Superior Ct. at 589–591, 440 A.2d at 622–623.

As in *Dorsey,* and striking the balance as best we can, we have concluded that the police in the case *sub judice* acted with due diligence. We agree with Judge Spaeth who, in *Dorsey,* referring to the efforts of the police said, "Their efforts were, in a rough way, equivalent to efforts that we have found in other cases constituted due diligence."

Having carefully reviewed the record in this case along with the briefs submitted by counsel and having made our own independent review and analysis of applicable law and having had the benefit of oral argument and having con-

cluded that the police acted with due diligence under all the circumstances, we reverse.

In *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981), our supreme court, speaking through Justice Kauffman said, *inter alia:*

Rule 1100 "serves two equally important functions: (1) the protection of the accused's speedy trial right, and (2) the protection of society," *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153–154, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

\*     \*     \*     \*     \*     \*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Id.*, 493 Pa. at 69–70, 72, 425 A.2d at 369–371.

We reverse and remand for trial. Jurisdiction is relinquished.