Commonwealth v. Lamb

*Gary Hartman, District Attorney,* for Commonwealth.

*Robert McQuaide* and *David K. James, III*, for defendants.

SPICER, *P.J.*, June 5, 1980—Defendants were found guilty by a jury of conspiracy to commit robbery. The cases were consolidated for trial without objection August 6, 1979. The jury found both defendants not guilty of robbery. Both defendants have filed post-verdict motions.

Defendants were convicted on the testimony of an accomplice, Brenda Ramos. She said she entered the Lincoln Diner in the early morning of December 5, 1978. The diner is on Carlisle Street in Gettysburg, about one block north of the town square. Intersecting with Carlisle Street at the square is U.S. Route 30, which is called York Street east of the square. She testified she pointed a handgun at the cashier in the diner and attempted to obtain money.

As a result of whatever she did, Ms. Ramos was arrested and charged with robbery. She pled guilty to robbery April 11, 1979. At the time of trial she had not yet been sentenced.

Defendant Lamb was arrested March 16, 1979, and defendant Schenk was arrested April 4, 1979. Both defendants remained in jail until trial. The complaints in each case were filed March 14, 1979. Defendants' pretrial motions consisted of a request for a reproduction of the record relating to Ms. Ramos's sentencing and timely motions to dismiss under Pa.R.Crim.P. 1100.

A criminal trial term was scheduled to begin June 18, 1979 by the Adams County Court calendar. On June 15, 1979 a motion to consolidate the cases for trial was filed and a hearing was scheduled for August 6, 1979. Also on June 15, 1979 a petition was filed requesting an extension of the time in which trial could be commenced under Rule 1100. The hearing on that petition was also set for August 6, 1979. The basis for the request was judicial delay.

The trial schedule for the June list was filled with other cases. Neither of these cases was scheduled for that term. The case was tried September 19, 1979 at the next available term. Trial terms in 1979 were established each month except for July, August, and December. According to the court's calculations, the run date on these cases was September 10, 1979.

On August 6, 1979 defense counsel stipulated that all cases scheduled for trial prior to this had a run date as soon or sooner than defendants' cases. The district attorney represented to the court that he was ready to proceed prior to the run date and no evidence, other than that representation, was taken. The extension was granted.

These consolidated cases were not the only cases in which Rule 1100 hearings were held. As the transcript of the proceedings of August 6, 1979 indicates, there was reference to other proceedings:

"THE COURT: Do you wish to produce any evidence as to the issue of due diligence, Mr. Hartman, or are you relying on your prior argument?

"MR. HARTMAN: I am relying upon the prior argument that the term system would indicate that the evidence would be that I would be prepared to go to trial at the time but there were no trial dates. Therefore, I'm arguing that the Commonwealth is prepared to go to trial but in the September term which is the basis for the motion."

While reviewing the transcript of another case, Com. v. Conjalko, 14 D. & C. 3d 61 (1980), the court determined that it may have curtailed the Commonwealth's opportunity to produce evidence. Because the proceedings in that case and in these consolidatd cases all occurred as part of the stream of business on August 6, 1979, the court determined it should order a supplemental hearing. This it did on January 30, 1980. The order was enterd pursuant to such holdings as Com. v. Groarke, _____ Pa. Superior Ct. _____, 409 A. 2d 870 (1979).

Defendants have objected to the hearing. They have argued that allowing the Commonwealth to present evidence well after the 180 day period amounts to a nunc pro tunc granting of an extension. However, cases condemning such action have involved situations in which the Commonwealth has not filed a request in a timely manner: Com. v. Royer, 256 Pa. Superior Ct. 361, 389 A. 2d 1165 (1978) (citing authority at p. 1166).

Perhaps this court relied too much upon its own firsthand acquaintance with the trial schedule for terms preceding September. Perhaps we were too old fashioned in relying upon the district attorney's representation that the Commonwealth was ready to proceed. The court believed that the hearing held

August 16, 1979 could be short and to the point and that we could rely upon our knowledge and confidence in the integrity of officers of this court.

In reviewing this case we believed that our reliance upon such trust and judicial knowledge may not be understood at the appellate level. Therefore, we ordered a supplemental hearing and do not feel it was error to do so.

Because of the unavailability of defendants the supplemental hearing was not conducted until April 16, 1980. At this hearing, the district attorney gave sworn testimony that all possible trial dates in terms prior to September, 1979 were filled with other cases.

In arguments following the supplemental hearings, defendants have alluded to the use by the Commonwealth of pre-printed form petitions. There is nothing wrong with the use of form petitions so long as facts are produced of record justifying an extension: Com. v. Miller, _____ Pa. Superior Ct. _____, 411 A. 2d 238 (1979).

Defendants concede that the Commonwealth is entitled to an extension if it can show the unavailability of a courtroom and of a judge and a crowded court docket which would prevent the Commonwealth from bringing defendants to trial: Com. v. Cimaszewski, 261 Pa. Superior Ct. 39, 395 A. 2d 931 (1978); Com. v. Waldon, 259 Pa. Superior Ct. 129, 393 A. 2d 751 (1978); Com. v. Royer, supra.

This concession should end the argument. The court takes judicial notice of the court calendar and trial schedules prior to the term in which defendants were tried. It has been stipulated that all cases scheduled for trial prior to defendants' cases had run dates earlier or the same as defendants' cases.

However, the argument is not ended. It is suggested that the district attorney should control

the court calendar to make delay impossible. Citing the holding which foreran Rule 1100, Com. v. Hamilton, 449 Pa. 297, 297 A. 2d 127 (1972), defendants suggest that the purpose of the rule is to stimulate change in the manner in which cases are scheduled. Therefore, they argue that these cases should have been tried even if it entailed adding more criminal terms to the court calendar.

Rule 1100 does not require such perfection in our opinion. It does not give defendants an unqualified right to be tried within 180 days. Extensions can be granted for judicial delay. If requests for extensions could be resisted by demanding more judges and more courtrooms and/or more trial terms, there would never be any extensions. There are two courtrooms in our court, but only one judge. Visiting judges are not easily obtained in the summer months. This court had previously expanded criminal trial terms from four times yearly to nine times yearly in 1979. The calendar was full and we do not think it was error to have granted the extension to the Commonwealth.

Lamb gave notice of intention to present an alibi defense on August 21, 1979. Some time prior to that, each defendant had requested pretrial discovery under Pa.R.Crim.P. 305. Each requested the names and addresses of all eyewitnesses.

On July 26, 1979 the district attorney voluntarily responded. He did not include in one letter the name of Gettysburg Patrolman Michael Hofe. Neither did he later inform defense counsel that the Commonwealth intended to call Michael Hofe, although that officer was subpoenaed September 4, 1979.

After the trial commenced, the Commonwealth called Brenda Ramos to testify. According to her, she was staying at Schenk's home on the evening of

December 4, 1978. She said that he met with defendants and Gary Chohany at Chohany's trailer. Her testimony was that defendants were drinking and began to talk about robbing a place. Ramos and the two defendants walked to a pizza place near Gettysburg College. They went to the Lincoln Diner where defendants looked to see how many people were present. She said that Schenk gave her a gun and thereafter she went into the Lincoln Diner to rob it. Instead of complying, the girl behind the counter called the police. Ramos said she fled from the diner, gave the gun back to Schenk and then ran away with Lamb.

Ramos' testimony was somewhat unclear in many details and the district attorney attempted to resurrect those details under redirect examination. He requested permission to have the witness refer to a written statement that had been prepared by Sergeant Russell Potter of the Gettysburg Borough Police.

Defense counsel objected to the use of leading questions. That objection was sustained. They further objected on the basis that the questioning was beyond the scope of cross-examination. The court overruled this objection, believing it to be discretionary. The third objection was that the use of the statement was not permissible because (1) it had not been prepared by the witness, (2) it was not shown to have been accurate at the time it was prepared and (3) the witness could not say that her recollection was revived.

The court held an extensive hearing outside the hearing of the jury. At the conclusion of that hearing the court determined that the statement had been prepared by Sergeant Potter by his writing down what the witness told him, had been adopted

by her and was therefore her statement. Further, the court determined that the statement was accurate when prepared and did refresh the witness' recollection, at least as to some of the matters.

While it is true that there were many vague and equivocal responses by the witness during her in camera interrogation, the court is satisfied that the testimony considered as a whole fulfilled the requirements set forth in such cases as Com. v. Proctor, 253 Pa. Superior Ct. 369, 373, 385 A. 2d 383, 385 (1978). Quoting with approval the Supreme Court of Michigan in Moncrief v. City of Detroit, 398 Mich. 181, 190, 247 N.W. 2d 783, 787-88 (1976), the court said:

> "'To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness's present memory is inadequate; (2) that the writing could refresh the witness's present memory; and (3) that reference to the writing actually does refresh the witness's present memory.'"

The court overrules defendants' contentions that error was committed in allowing the witness to refer to the statement.

Defendants have also argued that prejudicial error was committed by allowing the attorney for the Commonwealth to cross-examine Ms. Ramos and to introduce her statement. Exactly what basis there is for these arguments is rather unclear but both seem to emanate from the contention that the statement was placed into evidence.

As the record will make clear, the Commonwealth was allowed neither to ask leading questions nor to introduce the statement. Although counsel at trial equated questioning on redirect as

being the equivalent of cross-examining one's own witness, it is not.

Since the statement itself was never introduced, the argument that Ms. Ramos made the statement after the termination of the conspiracy lacks relevance.

These arguments are therefore, overruled.

The Commonwealth called only two witnesses during its presentation of the case. As may be inferred from comments on the testimony of Ms. Ramos, her presentation stood in need of bolstering through corroboration. For this purpose, a member of the Gettysburg Borough police, Michael Hofe, was called to testify that he observed a person who he thought was Brenda Ramos running across Chambersburg Street with a male companion. The time and place were closely related to the time of the incident at the Lincoln Diner. As was pointed out at trial, the testimony could well have been crucial. It certainly would have bolstered Ms. Ramos by lending corroboration to her statement that she and Lamb fled the crime scene together. Certainly, there was no other corroboration, even from the person allegedly held up in the diner.

As soon as the Commonwealth called Mr. Hofe to the stand, both defendants objected to his testifying and moved to have him prevented from testifying. The reason for the defense motion was noncompliance by the Commonwealth with Pa.R.Crim.P. 305.

It appears that both defendants requested, among other things, the names of all eyewitnesses prior to the time of trial. The Commonwealth responded informally but did not, for some reason, divulge Officer Hofe's name. The district attorney stated the reason was that he did not have all the

information and directed both counsel to the prosecutor, Sergeant Potter. Both counsel evidently talked to Sergeant Potter. However, the attorney for Lamb was told that a police officer saw someone who "might have been Brenda Ramos with someone he thought was a white male." The attorney for Schenk was not told this.

The court offered to give defense counsel a half day continuance for the purpose of investigating the credibility of the officer. Both declined.

The court feels that Lamb waived the right to object. Once he was told there was a witness and was not informed of that witness' name, his remedy was to seek compulsory disclosure under Rule 305. He did not do this.

Schenk has not waived the issue and the question becomes whether he was prejudiced by the nondisclosure. If the objection was purely a technical one based upon noncompliance, the objection should be dismissed. If, however, prejudice has resulted, the objection should be sustained.

Without pondering over why the Commonwealth failed to comply with the rule, we are forced to note that the rule makes no explicit provision for this type of situation other than precluding the testimony. Rule 305 E provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances."

At the time of trial, the court decided to allow the officer to testify and gave defense counsel an opportunity to investigate the statement before the testimony was permitted. Both counsel declined to request the partial continuance.

In reviewing the trial decision, the court first looks to the purposes of the rule. The comments to the rule refer to the ABA Standards Relating to Discovery and Procedure Before Trial (approved August, 1970). Two are perhaps pertinent to this case. They read as follows: Section 1.1(a) "(i) to promote an expeditious as well as fair determination of the charges, whether by plea or trial . . ." and "(iii) to permit thorough preparation for trial and minimize surprise at trial . . ."

In this regard, however, Rule 305B(2) requires a showing that disclosure is material to the preparation of the defense and that the request is reasonable before disclosure of eyewitnesses will be mandated.

We note, first, that no assertion of prejudice was made at trial other than to say that the district attorney had not complied. Secondly, neither counsel took advantage of offered time in which to evaluate the situation. It would appear, therefore, that defendants failed to show enough at trial to have justified a pretrial order requiring disclosure. Their objections, thus appear based only on technical noncompliance rather than on prejudice.

There is no real indication that either defendant was truly surprised by the witness and his testimony. If they were, it would be something the rule seeks to avoid. However, an opportunity was presented to allow defendants to assess, evaluate, and perhaps present arguments showing real prejudice.

While both defendants relied on an alibi defense, Lamb called no witnesses other than himself. Schenk called three witnesses in addition to himself. None of those three directly related to Hofe's testimony. Hofe said he saw Ramos and a white male. Schenk and his witnesses said he was elsewhere. Lamb said he was elsewhere. Therefore, other than corroborating Ramos, Hofe said nothing that directly contradicted defendants' witnesses.

Both defendants knew well in advance of trial what Ramos was going to say. They had seen her statement. They were provided with a transcript of her colloquy when she pled guilty.

One is tempted to say that a rule has been broken, there is no reasonable excuse for breaking it and therefore the proceedings should be nullified. However, in sharper perspective we see nothing that requires this treatment. We do not excuse the Commonwealth's failure to disclose, but on review we do not determine that the failure requires a new trial.

Defendants next maintain that the court erred in failing to discharge the jury after it reported several times that it was deadlocked. Unfortunately for defendants, they did not request this at trial and have therefore waived the issue. In fact, both counsel were requested by the court the last time the jury reported it was unable to arrive at a verdict to consult with their respective clients to determine whether either wished to move for a mistrial. Neither did.

At any rate, the court gave proper instructions to the jury each time it reported an inability to arrive at a verdict. The jury retired at 11:46 a.m., was fed twice, and returned with a verdict at 9:10 p.m.

There is nothing to suggest the jury was coerced or forced into arriving at a verdict.

Defendants argue that the court erred in overruling the demurrer. Since they did not rest after the demurrer was overruled, they technically have not preserved this issue for review. However, in treating the issue as challenging the sufficiency of evidence upon which the verdict was based, we are impelled to say that the testimony of Ms. Ramos, if believed, is sufficient to sustain the convictions. She said defendants discussed and agreed to commit a robbery, then gave her a gun to perform it.

Defendants finally say that the verdicts are inconsistent and therefore cannot stand. There is nothing inconsistent about the verdicts. The jury could well have believed some of Ms. Ramos' testimony and not all.

The Commonwealth failed to call any witnesses who were present in the diner when the alleged robbery occurred. Defendants were entitled to and received a missing witness instruction. The jury had the right to disbelieve Ms. Ramos' version of what happened in the diner and to believe the remainder of it. Therefore, the verdicts are not inconsistent. Even if they were, they are not so inconsistent as to require that the guilty verdict be set aside.

Therefore, the attached order will be entered.

## ORDER

And now, June 8, 1980, the post-verdict motions of each defendant are overruled. Defendants shall be present in court for sentencing July 9, 1980 at 9:00 a.m.