**Commonwealth v. Hood**

74

**Donald E. Williams, District Attorney**, for Commonwealth.
**W. M. Panella**, for defendant.

SALMON, *S.J., Specially Presiding*, June 28, 1980—We have before us defendant's motion for dismissal of the charges for violation of Pa.R.Crim.P. 1100 and also an application by the Commonwealth under the Mental Health Procedures Act of July 9, 1976, P.L. 817, sec. 101, 50 P.S. §7101 et seq., and particularly §§7403 and 7404, the same being sections 403 and 404 of said act. Under the provisions of that act, the Commonwealth would have us determine at this stage of the case and prior to trial whether defendant was criminally responsible by reason of his mental condition at the time the alleged offenses were committed. Pursuant to the said application by the Commonwealth, we set a hearing for May 16, 1980, at 9:30 a.m.

Defendant appeared at the hearing with his counsel, W. M. Panella, Esq., and the Commonwealth was represented by D. E. Williams, Esq., District Attorney. A full hearing was held as indicated by the transcript of testimony filed. The Commonwealth called three witnesses, police officers of the City of New Castle, who investigated the alleged offenses immediately after they occurred, arrested defendant or had other contact with him.

All were cross-examined. The Commonwealth also offered some 14 exhibits relating to the alleged crimes or the mental condition of defendant. The salient facts are as follows.

On November 28, 1978, at about 8:15 p.m., the New Castle Police Department was called and informed of a shooting at 10 Sankey Street in New Castle. Police officers arrived at the scene about 8:30 p.m. They found the victim, Angela Hawk, lying on the floor in an unconscious condition with a gunshot wound of the head. Defendant was present and readily stated, "I shot her." The house was occupied by defendant, another man identified as Alan Williams, the victim and her two children, then aged about four and six years.

In the living area of the house where the officers found the victim and defendant, they also found two handguns and a broken whiskey bottle. They took a statement from Alan Williams, the other adult in the house, which is attached to the transcript as Exhibit 10 and was received in evidence. The substance of the Williams statement as written and also as previously made verbally is that he was upstairs and the victim and defendant were downstairs. He heard glass breaking and then heard two shots. He ran downstairs and saw Angela on the floor and defendant standing with a gun in his hand. Williams says defendant told him the victim had shot first and he laid down his gun.

The testimony of the officers is that defendant was smiling throughout their investigation, said they had a shoot-out, indicated the victim had shot at him, said, "She is not going to take over this house," and at no time appeared to appreciate the seriousness of the situation including his own pre-

dicament. The victim was alive but not conscious and was removed by ambulance to St. Francis Hospital in New Castle where she was apparently examined and, within an hour or so, she was transferred to the South Side Unit of Youngstown Hospital, Youngstown, Ohio. The victim died at 3:00 p.m. on November 30, 1978.

The police arrested defendant and took him to the police station in the City Building. Defendant was processed and charged with aggravated assault. On December 1, 1978, he was additionally charged with murder in the first degree and murder in the third degree, contrary to sections 2502(a) and 2502(c) of the Crimes Code, 18 Pa.C.S.A. §§2502(a) and 2502(c).

The Mental Health Procedures Act, 50 P.S. §§7402(a) and 7402(c), provides in part as follows:

"(a) Definition of Incompetency.—Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

". . .

"(c) Application for Incompetency Examination.—Application to the court for an order directing an incompetency examination may be presented by an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden or other official in charge of the institution or place in which he is detained. A person charged with crime shall be represented either by counsel of his selection or by court-appointed counsel."

The Mental Health Procedures Act modifies prior procedure by making it possible to separate the determination of competency at the time of the offense from the determination of guilt or innocence and, if incompetency at the time of commission of the alleged offense is established, to discharge defendant from prosecution and to enter a court order directing involuntary treatment if such course is indicated: section 406. The test of mental capacity for criminal responsibility is not changed by this statute: Section 404, 50 P.S. §7404(a).

No case has been cited to us which was heard under this statute and our own research has revealed none. Determinations affecting those charged with crime are governed by Article IV of the act. Section 402 as above quoted provides in pertinent part, 50 P.S. §7402(c): "Application to the court for an order directing an incompetency examination may be presented by an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden. . . ." In this case, as we have said, the application was submitted by the district attorney representing the Commonwealth.

Section 403 of the act, 50 P.S. §7403, provides in pertinent part as follows: "The moving party shall have the burden of establishing incompetency to proceed by clear and convincing evidence. The determination shall be made by the court."

Section 404(a) of the act, 50 P.S. §7404(a), provides in pertinent part:

"At a hearing under section 403 of this act the court may, in its discretion, also hear evidence on whether the person was criminally responsible for

the commission of the crime charged. It shall do so in accordance with the rules governing the consideration and determination of the same issue at criminal trial. If the person is found to have lacked criminal responsibility an acquittal shall be entered. If the person is not so acquitted, he may raise the defense at such time as he may be tried."

This case has proceeded under section 403 of the act and evidence has been adduced upon which the Commonwealth asks us to determine "whether the person charged was criminally responsible for the commission of the crime charged." We are to do so "in accordance with the rules governing the consideration and determination of the same issue at criminal trial," these quotations being from section 404(a), supra.

The test for criminal responsibility continues to be the M'Naghten test, viz.: at the time he committed the alleged offense, either defendant did not know the nature and quality of the act *or* he did not know that it was wrong: Com.v. Demmitt, 456 Pa. 475, 321 A. 2d 627 (1974); Com. v. Norman, 259 Pa. Superior Ct. 301, 393 A. 2d 837 (1978). Thus under section 403(a) of the act, supra, the burden is upon the applicant, here the Commonwealth, to establish such fact by clear and convincing evidence.

The evidence before us consists of testimony by three police officers who had contact with defendant immediately after the crime and two of whom had known him for several years prior thereto.

Sergeant Freed testified that he went to the scene in response to the call and he found defendant there and asked, "What happened?" and defendant answered, "I shot her." The sergeant remained at the

house 30 to 45 minutes with defendant. He described defendant as "nonchalant." After defendant was taken to the City Building; this sergeant was again in his presence. He stated that defendant acted silly at times, would laugh, would say they had a shoot-out. When asked if he would make a statement, he said "Why? I don't even know why I'm here." Defendant used the phone, called somebody and said he had shot Angela and that "[t]hey say I shot her in the head but I shot her in the side. I aimed and got her right in the side, I couldn't have shot her in the head." Further, Sergeant Freed stated that defendant was silly, laughing, smiling. The sergeant said that the procedure in the City Building consumed an hour or so and defendant never exhibited any degree of seriousness (sic) of the offense he was there for.

Sergeant Freed also testified that just one bullet was removed from the victim's body, that he made the complaint for aggravated assault and then, some three days later after she had died, made the additional complaint charging homicide. He related the cause of death from the coroner's report as "Gunshot wound of the left side of the head just above the left ear, etc."

Officer Nocera was next called. He said he arrived at the scene at the same time as Sergeant Freed and the ambulance. He also heard defendant say, "I shot her." This officer read defendant the Miranda warnings. He confirmed Sergeant Freed as to defendant's smiling and laughing and that defendant seemed not to appreciate the seriousness of the situation. The witness said the seriousness of the victim's wound and condition was apparent but seemed not to affect defendant. He said he observed no odor of alcohol or other indication of drinking on

defendant. He also heard defendant say, "She is not taking over this house." Under cross-examination, this witness said he thinks defendant comprehended his Miranda rights when they were read to him.

The third and last witness called was Lieutenant Malloy of the New Castle Police Department. He heard the original call dispatching units to 10 Sankey Street but he remained at his desk until it was verified that there was a shooting at which time he went to the scene. The other officers were there ahead of him and the victim had been removed before he arrived. The lieutenant took charge and assigned tasks to other officers. He saw defendant whom he had known previously. He said he had a strange look in his eyes and he was constantly smiling. He said defendant seemed to have no permanent home and was constantly moving around. He had been at the Sankey Street address with Alan Williams about a year. This witness identified Exhibit 10, the statement by Alan Williams above referred to. He said defendant seemed relaxed, laughed a few times and didn't seem serious. He also said that "in this officer's experience with him he always acts that way." He said defendant was not upset or remorseful and stated he had not done anything wrong. This witness said defendant was in his presence about two hours and seemed never to realize the seriousness of the crime. He also said defendant sat as if watching a ball game and that his attitude did not fit the circumstances.

Also received in evidence was Exhibit 11 which is a psychiatric evaluation of defendant's competency to stand trial prepared by Eun Sook Yoo, M.D., under date of May 22, 1979. This evaluation was done at Farview State Hospital pursuant to an order

by the Honorable John A. Cherry, Senior Judge, Specially Presiding, on April 19, 1979. The report makes a diagnosis of paranoid schizophrenia in partial remission, but also makes a prognosis of return to competency in the near future on the basis of his response to prescribed drugs.

Exhibit 12 is a subsequent evaluation made at Farview and dated August 22, 1979 by Kenneth J. Detrick, M.D., which concludes defendant is competent to stand trial. Defendant was thereupon returned to Lawrence County under a court order dated October 11, 1979 and arrived here October 22, 1979.

Defendant was arraigned November 13, 1979 and pleaded not guilty to all charges. On November 19, 1979 defendant presented a motion to dismiss under Pa.R.Crim.P. 1100. The court issued a rule thereon to the Commonwealth to show cause why the motion should not be granted.

On November 19, 1979 the Commonwealth presented a motion to require submission and filing of the Farview reports and for an extension of time for trial to January 31, 1980. This combined motion was presented ex parte with form of order attached and without any notice to defendant indicated on the record and with no request for issuance of a rule. The order was signed by the court as presented.

On December 21, 1979 defendant presented his application to the court, seeking authorization to employ a psychiatrist to examine and evaluate defendant's mental condition at the expense of Lawrence County. The application was granted by President Judge McCracken on the same day. The examination was performed by Shoukry Matta, M.D., a qualified psychiatrist. That report con-

cludes that defendant is competent to stand trial and that the doctor found no evidence of organic brain syndrome. That report was supplemented by a further letter from Dr. Matta which says he is unable to reach any conclusion as to competency of defendant at the time of the shooting.

We are satisfied that the three officers called by the Commonwealth testified truthfully. Accepting their testimony on that basis, we find nothing therein to warrant our concluding that defendant was incapable of knowing either the nature or quality of his act in shooting Angela Hawk or that he did not know his act was wrong. There is nothing in the testimony upon which we could ground a finding that his smiling, his lack of remorse, and his statement that he had done no wrong were due to lack of mental capacity rather than a firm belief that he had a right to act in self-defense, or for that matter, that his act grew out of a conscious determination to prevent the victim from "taking over the house." If the tests performed by Dr. Matta did not enable him to determine this issue, certainly the testimony does not enable us to do so. The Commonwealth's motion must be refused.

We turn now to defendant's motion for dismissal for violation of Pa.R.Crim.P. 1100.

The homicide complaint was filed December 1, 1978, preliminary hearing was held December 19, and the relevant chronology from that point is as follows:

### 1979

March 7   Indictment returned True Bill.

April 19   On motion of Commonwealth, court orders transfer of defendant to Farview for period not to exceed 90 days for psychiatric examination

and determination of mental competency and responsibility.

April 23   Sheriff transfers defendant to Farview.

April 25   Defendant petitions for a "hearing prior to a transfer to the State Mental Institution."

April 25   Petition for hearing denied after oral argument—Transcript filed.

June 12   Farview, per Administrator, reports to court that defendant is not competent to stand trial.

June 20   On motion of Commonwealth, said report of Farview Hospital ordered filed and time for trial *continued* generally until such time as defendant is determined to be competent to stand trial.

August 31   Kenneth J. Detrick, M.D., Farview State Hospital, reports defendant competent to stand trial.

October 11   Court, sur report from Farview, orders defendant released to Sheriff and returned to Lawrence County for further proceedings.

October 22   Sheriff returns defendant to Lawrence County.

November 13   Defendant arraigned and pleads not guilty.

November 16   Commonwealth presents motion to order Superintendent of Farview to supply district attorney with records of all reports, etc. and for extension of time for trial to January 31, 1980, and order thereon ex parte.

November 19   Defendant presents motion for dismissal under Rule 1100 and rule issued.

November 28   Defendant files omnibus motion for pre-trial relief and for discovery and rule issued to Commonwealth.

November 29   Commonwealth files answer to discovery rule.

November 29   Commonwealth files answer to rule to dismiss under Pa.R.Crim.P. 1100.

December 14   On motion, court sets hearing date.

December 21   Defendant moves for leave to employ psychiatrist at expense of county and order entered granting same.

## 1980

January 16   Hearing had on motion sur Rule 1100.

March 14   Defendant files new motion to dismiss sur Rule 1100.

March 19   Commonwealth files answer to new motion sur Rule 1100.

May 5   Commonwealth applies for hearing to determine competency as to criminal responsibility at time of offense.

May 16   Hearing had.

The Commonwealth on April 19, 1979 presented its petition to the Honorable John A. Cherry, Senior Judge, Specially Presiding, asking that defendant be transferred to Farview State Hospital for a period not to exceed 90 days for psychiatric examination to determine his competency to stand trial. The petition alleges under affidavit that defendant behaved immediately after the alleged offense in a manner indicating he did not comprehend the gravity of the alleged offense or of his own predicament as a result thereof. The petition asks that report of the examination be made available to defense counsel and to the district attorney. The petition sought no rule upon defendant, was presented ex parte and Judge Cherry signed the form of order as prepared by petitioner.

Six days later, on April 25 and after defendant had been transported to Farview by the sheriff, defense counsel presented a petition for a hearing to determine whether the Farview examination should be carried out. Counsel on both sides were fully heard by Judge Cherry on April 25 and the transcript of that procedure is part of the record.

Such examinations are governed by the Mental Health Procedures Act, supra. The act provides in section 402(d), 50 P.S. §7402(d):

"(d) Hearing; When Required.—The court, either on application or on its own motion, may order an incompetency examination at any stage in the proceedings and may do so without a hearing unless the examination is objected to by the person charged with a crime or by his counsel. In such event, an examination shall be ordered only after determination upon a hearing that there is a prima facie question of incompetency."

While this sub-section provides that where, as here, defendant objects to being examined, it shall be determined by hearing whether there is a prima facie question of incompetency, we think such hearing does not necessarily require the taking of testimony. While we have found that we are not able in this case to determine incompetency at the time of the alleged criminal act, it is clear that the actions and attitude and demeanor of defendant at that time would lead any concerned person to inquire as to his mental capacity. In these circumstances the Commonwealth, upon trial of the case, would have to establish, as an element of proof, that defendant was competent and thus might be held criminally responsible for his alleged act: Com. v.

Demmitt, supra. While these are now matters of hindsight, defendant was in fact found incompetent to stand trial and, moreover, he has now himself requested the services of a psychiatrist of his choosing in preparation for trial. We find that Judge Cherry exercised his discretion wisely and upon a sound legal basis. It is clear beyond reasonable doubt that defendant suffered no prejudice by the absence of a testimonial hearing on this issue.

The Commonwealth was obliged to bring defendant to trial within 180 days after December 1, 1978, when the complaint was filed. We calculate the 180th day to be May 30, 1979. As the chronology indicates, defendant, by court order, was committed to Farview State Hospital on April 19, 1979. On October 11, 1979 the court entered its order based on a report of competence from Farview that defendant be returned to Lawrence County for further proceedings. It may be fairly assumed that the Commonwealth knew on October 11 that defendant was competent to stand trial. The number of days elapsed between April 19 and October 11 we find to be 175 days. We further find that during this period defendant was not available for trial and therefore 175 days will be omitted in our calculation under Rule 1100.

On November 16, 1979 the Commonwealth presented, ex parte and without notice to the defendant so far as the record shows, its motion to order the reports from Farview to be made part of the record and to extend the time for trial to January 31, 1980. By our calculation, November 16 was the 175th day. The Commonwealth had attached to its said petition a form of court order granting both of the said prayers contained in the petition and the same was signed by the court as presented.

At this point it is necessary to review the language of Pa.R.Crim.P.1100 and particularly subsection (c) which reads as follows:

"(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. *A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.* Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced." (Emphasis supplied.)

When the Commonwealth presented its petition on June 20, 1979 for extension of the 180 day period, it was of course well within the period of the rule. Judge Cherry ordered that "the time for commencement of trial is continued generally until such time as the defendant is determined to be competent to stand trial." The form of this order, obviously prepared by the Commonwealth, leaves something to be desired because it does not follow the language of the rule, which speaks of "extending" the time for trial. However, the prayer of the petition in paragraph 5 does ask that the time be "extended." We therefore treat the order as a proper order of extension. However, the order does not name a date to which the time is extended but extends the time until "the defendant is determined to be competent to stand trial." In our view that date proved to be October 11, 1979. Of course, the Commonwealth still had until November 21, 1979,

which by our calculation would have been the 180th day, to commence trial or to present its petition for another extension.

When the Commonwealth presented its motion on November 16, 1979 for an extension of time, it was within the 180 day rule. However, we are seriously troubled by the fact that the motion was presented ex parte and without notice to defendant or his counsel. The question is thus presented whether that order, made in those circumstances, was effective to extend the time for trial.

Rule 1100 has its genesis in Com. v. Hamilton, 449 Pa. 297, 297 A. 2d 127 (1972). The concluding paragraph of the opinion by Mr. Justice Nix at pages 308 and 309 expresses the intention of the court to refer the matter to the Criminal Procedural Rules Committee in an effort to protect more effectively the constitutional right to a speedy trial of those charged with crime. In other words, the right herein sought to be protected is a constitutional right and this has been reiterated many times in our appellate court cases construing the rule.

We have not been able to find a reported case which deals specifically with the requirement above that a copy of the application be served on the defendant or his counsel. However, in view of the constitutional nature of the right involved, we have no doubt that this provision of the rule must be strictly construed and held to be mandatory. We are led to the conclusion that a court order purporting to extend the time for trial, which has been obtained without notice to the defendant or his counsel, is a nullity.

Review of the record reveals no other application for extension of time presented by the Commonwealth within the 180 day period or within the

period of any prior properly entered court-ordered extension: Com. v. Woods, 461 Pa. 255, 336 A. 2d 273 (1975); Com. v. O'Shea, 465 Pa. 491, 350 A. 2d 872 (1976); Com. v. Morgan, 484 Pa. 117, 126, 398 A. 2d 972, 976 (1979). We are forced to the conclusion that defendant has not been brought to trial within the requirements of Rule 1100 and must be discharged.

## ORDER

And now, June 28, 1980, for reasons set forth in the foregoing opinion, the Commonwealth's motion for a determination that defendant was without criminal responsibility by reason of mental incompetence at the time of commission of the alleged offense is refused; and defendant's motion to dismiss the charges for failure to comply with Pa.R.Crim.P.1100 is granted and defendant is discharged.