## Commonwealth v. Widener

*Floyd P. Jones,* Assistant district attorney, for the Commonwealth.
*John R. Gailey, Jr.,* for defendant.

RAUHAUSER, *J.,* January 19, 1984 this matter comes before the court on the Commonwealth's application to extend the time for commencement of trial, filed September 13, 1983. The defendant's answer thereto and defendant's petition to dismiss the information are all in accordance with Pa.R.Crim.P. 1100.

Additionally the Commonwealth filed an application to extend time for commencement of trial, as of November 25, 1983 and a rule was issued thereon, returnable as of January 6, 1984.

A hearing was held on November 7, 1983 and briefs have now been filed by the Commonwealth and defendant.

On January 25, 1982, a written complaint was filed against defendant, Freddie Douglas Widener, charging him with robbery, which offense was alleged to have occurred on January 23, 1982. Defendant was arrested on February 25, 1982, by Maryland authorities in cooperation with York County authorities. At the time of his arrest, defendant was found to be in possession of drugs as well as a firearm. On that basis, he was charged by the Maryland authorities for those offenses. From February 25, 1982 onward the Pennsylvania authorities knew the whereabouts of defendant.

In April of 1982, the District Attorney of York County, J. Christian Ness, met with defendant and defendant's counsel, Gary Mandell, and further had conversations with officials from the Maryland State's Attorney's Office and with defendant's Maryland probation and/or parole officers. At that time the district attorney was told by the Maryland authorities that the Commonwealth of Pennsylvania could not obtain custody of defendant until his charges were disposed of in the State of Maryland. He was also advised by Attorney Mandell that defendant would probably get a 15 year sentence on the Maryland charges. From that point, through the summer of 1983, there ensued various conversations between the district attorney, Attorney Mandell, and the Maryland authorities as to the disposition of defendant's Maryland cases. The Maryland authorities apparently were attempting to convince the district attorney of York County to accept the manner in which defendant was treated in Maryland as a conclusion to all matters and suggesting that defendant be sent to a drug treatment facility located in the State of Texas. As of the date of defendant's return to the Commonwealth of Pennsylvania in August of 1983, no such agreement had been arrived at. It appears that defendant entered a plea of guilty to the Maryland charges and was sentenced on April 17, 1983.

In April of 1982, the County Detective for the County of York filed a Form V under the Interstate Agreement on Detainers with Maryland authorities asking for the return of defendant pursuant to that act. No response was ever received from the Maryland authorities in regards to that form. On April 12, 1983, the York County Detective received a call from the prison in Maryland stating that defendant was ready for release to the Commonwealth of

Pennsylvania. The County Detective testified that in response to that call he waited for shortly over a month to receive a Form IV under the Interstate Act on detainers which would indicate that defendant was ready for transfer to the Commonwealth of Pennsylvania. When that form was not received by the York County Detective, another Form V pursuant to the Act on Detainers was sent to Maryland authorities in May of 1983. Again, the Commonwealth received no response to the Form that was delivered to the Maryland authorities. In August of 1983, the Commonwealth received a call from Maryland authorities indicating that defendant was ready to be transferred to the Commonwealth of Pennsylvania. On August 31, 1983, York County Sheriff's Deputies travelled to Maryland, picked up defendant, and returned him to the County of York, although it does not appear by what, if any formal authority, this action was taken.

It is well settled that an accused is not deemed unavailable for Rule 1100 purposes merely because he or she is incarcerated elsewhere. Comm. v. Smith, 274 Pa. Super. 229, 418 A.2d 380 (1980); Comm. v. Bass, 260 Pa. Super. 62, 393 A.2d 1012 (1978); Comm. v. Clark, 256 Pa. Super. 456, 390 A.2d 192 (1978). In Comm. v. Warman, 260 Pa. Super. 130, 393 A.2d 1046 (1978), the Pennsylvania Superior Court observed that:

"Rule 1100(d)(1) provides that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney." Mere incarceration in another jurisdiction does not make appellant unavailable. Appellant will be considered unavailable only for the period of time during which his presence could not be secured despite

due diligence by the Commonwealth. Comm. v. Richbourgh, 246 Pa. Super. 300, 369 A.2d 1331 (1977); Comm. v. Kovacs, 250 Pa. Super. 66, 378 A.2d 455 (1977). "There is no question, therefore, that the duty imposed on the Commonwealth by Rule 1100 to bring a defendant to trial within the prescribed period is not affected by the fact of his incarceration elsewhere. . ." Comm. v. McCafferty, 242 Pa. Super. 218, 224, 363 A.2d 1239, 1241 (1976).

Article IV of the Agreement on Detainers provides as follows:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated.

Subsection (a) of Section 9126 of the Uniform Criminal Extradition Act, reads as follows:

(a) Extradition from another state.—When it is desired to have returned to this Commonwealth a person charged in this Commonwealth with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this Commonwealth may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state.

The Commonwealth, therefore, has two vehicles available to it for the return of prisoners.

The sole question in this case is, therefore, whether or not the Commonwealth used reasonable efforts in the light of these procedural requirements, to return this defendant to the Commonwealth of Pennsylvania.

The Commonwealth contends its efforts were reasonable. Defendant argues the contrary position.

Defendant argues that absent a showing that the Commonwealth attempted to follow Extradition procedures it cannot contend that its efforts were reasonable, that using the procedure prescribed by Detainer Agreement did not constitute a reasonable effort since it was an improper procedure (since it applies only when a person has entered upon a term of imprisonment in a penal or correctional institution) and that the Commonwealth cannot rely on representations or misrepresentations of Maryland authorities as a substitute for taking the formal action required.

To this the Commonwealth responds that since Maryland had stipulated that it would not release defendant until his Maryland case had been disposed of, such extradition proceedings would have been "an exercise in futility."

The Commonwealth cites, in support of its position, the explanatory Comments to Rule 1100 dealing with subsection (3) (i) which states, in applicable part: ". . . in addition to any other circumstances precluding the availability of the defendant the defendant should be deemed unavailable for the period of time during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition."

The difficulty with the Commonwealth's position is that it never did commence "extradition proceedings," ergo, extradition was never contested, delayed or refused. What the Commonwealth did was

to commence proceedings under the Interstate Agreement on Detainers, — admittedly a technically incorrect procedure under the existing circumstances.

There is no evidence in this case that the Commonwealth did not proceed with extradition because Maryland said that defendant would be made available at the end of his prison term in Maryland. Indeed the Commonwealth's testimony is that Maryland was refusing cooperation.

On top of that refusal, a first and a second detainer were ignored by Maryland and still the Commonwealth did not attempt at any time to proceed with extradition.

Only after all of this — and based merely on a phone call, did the Commonwealth of Pennsylvania proceed to bring defendant back to Pennsylvania, — without any procedural basis at all having been perfected formally.

In Commonwealth v. Alexander, ____ Pa. Super ____, 464 A.2 1376; (1983), a case having remarkable similarities to the instant case, the court held that proceedings under the Detainers Act (are inappropriate) since it applies only when a person has entered upon a term of imprisonment in a penal or correctional institution." Further that court specified that Extradition "could have been started while (the defendant) was incarcerated awaiting trial in the asylum state." And finally Alexander answers the Commonwealth's "exercise in futility argument" by noting that "The matters of availability and due diligence must be judged by what was done by the authorities rather than by what was not done."

We are bound by Alexander and its antecedent cases which spawned Rule 1100, all designed to "eliminate vagueness" and to avoid the necessity of

the courts' determining violations, on a case-by-case basis, of one's 6th Amendment right to "a speedy trial." Comm. v. Hamilton, 449 Pa. 297; 297 A.2 127 (1972).

Recognizing such constraint we note, nevertheless, that Judge Rowley filed a concurring opinion in the Alexander case, supra, "reluctantly" joining in the Superior Court's opinion which ordered the release of the defendant in that case because of the Commonwealth's failure strictly to comply with Rule 1100. He decried the fact that Rule 1100 is a "prime example of the exaltation of a rule of procedure . . . to such a status that it affords an accused far greater benefits than do the underlying Constitutional provisions . . . that the procedural rule was designed to implement." Like Judge Rowley "we . . . have no authority, or right, to amend the Supreme Court's procedural rules or to overrule the decisions of that court interpreting and apply its rules."

Since those rules and decisions mandate that the appellant be discharged because his trial was not commended within the time frame thus required, we reluctantly enter the following.

## ORDER

Defendant's petition to dismiss the information and discharge defendant is hereby granted and the Commonwealth's applications to extend time for the commencement of trial are accordingly, denied and the rule issued returnable, is dismissed.