471 A.2d 902

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David M. FAISON.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1983.

Filed Feb. 17, 1984.

Petition for Allowance of Appeal Denied June 22, 1984.

Garold Edward Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Jeffrey L. Penneys, Assistant Public Defender, Philadelphia, for appellee.

Before SPAETH, President Judge, and BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

The sole issue before us in this appeal is whether the lower court erred in dismissing charges that had been filed against the appellee. The court dismissed the assault[1] and recklessly endangering another person[2] charges on the grounds that appellee could not be timely tried, as required by Pa.R.Crim.P. 1100. The court therefore denied a petition for extension of time which had been filed by the Commonwealth, dismissed the charges and discharged appellee. We reverse and remand for trial.

A complaint was filed on February 28, 1980 charging appellee with the above listed crimes. The charges stem from an alleged attack on his brother by appellee.

On February 28, 1980 the police received information from appellee's mother that he had been in the vicinity of Germantown and Chelten Avenue, Philadelphia. She also

1. 18 Pa.C.S. §§ 2701, 2702.

2. 18 Pa.C.S. § 2705.

told the police that her son no longer resided with her and was not welcome in her home.

On February 28, 1980, April 20, 1980, July 1, 1980, and August 17, 1980, the police went to the Germantown-Chelten area because they had received information that appellee had been sighted there. The officer who visited the area testified at the Rule 1100 hearing that he travelled on neighboring streets and looked in various bars and open business establishments, but was unable to locate anyone fitting appellee's description. The officer also circulated 60 or 70 photos of appellee to the police squads who worked in the area where appellee had been spotted.

Appellee was arrested on January 4, 1981. Petitions for extension of time were filed on June 29, 1981, December 31, 1981 and February 28, 1982. At a hearing on March 2, 1982 the lower court denied the last petition. The Commonwealth contends that appellee was unavailable from February 28, 1980 to January 4, 1981.

It was agreed by the Commonwealth and appellee's counsel at the March 2 hearing that appellee was unavailable for trial from January 13, 1981 to December 30, 1981 during which period appellee was incompetent. The issue below and before us is whether the Commonwealth used due diligence in seeking to arrest appellee.

The Commonwealth has the burden of proving by a preponderance of the evidence that the police exercised due diligence in trying to find appellee. *Commonwealth v. Dorsey*, 294 Pa.Super. 584, 440 A.2d 619 (1982).

In *Commonwealth v. Hinton*, 269 Pa.Super. 43, 50, 409 A.2d 54, 57–58 (1979), we explained:

It seems clear that the test is *not* a venture into hindsight reasoning as to whether, if certain individuals had been contacted, on other things done, an arrest would probably have been made. The matter of availability and due diligence must be judged by what *was* done by the authorities rather than what was not done. The standard of due diligence demands only reasonable efforts. (emphasis in original.)

At the March 2, 1982 hearing the lower court asked the police what efforts, other than those outlined above, had been made to locate appellee. When the District Attorney explained that the attempts made were the only ones possible with the information available to the police, the court commented.

There are so many other ways that the police department or your office can find a person if they wanted to do it. They will find a person, believe me, if they want to. They have the resources of the FBI and vital statistics. They can investigate the utilities such as the gas and telephone. They can investigate social security and DPA.

The District Attorney opined that the resources of the FBI would not have been available in this case and the court replied:

Most of the time they cooperate with the District Attorney's office. There has to be some showing that these things were at least attempted. And not just four cursory visits to the area of Green and Chelten, or Chelten and Germantown Avenues.

■ We believe that the lower court incorrectly based the decision on its view of what else the police could have done, rather than on its belief that what was done was inadequate. See *Commonwealth v. Dorsey, supra* (court would not say that failure to set up a stakeout at appellee's house or to check welfare rolls demonstrated lack of diligence.) See also *Commonwealth v. Jones*, 256 Pa.Super. 366, 389 A.2d 1167, 1170 (1978) in which we said, "Although the police could have pursued other avenues to locate appellant, that is not the controlling factor. It is simply not required that the Commonwealth exhaust every conceivable method of locating a defendant. Rather, reasonable steps must be taken." In *Jones* we found that the Commonwealth had proved its due diligence when an undercover narcotics officer conducted surveillance on five or six occasions of known drug traffic areas; six months after issuance of the complaint identified the defendant's photograph and made con-

tact with local police who arrested the defendant seven months after the complaint was filed. See also *Commonwealth v. McDermott*, 280 Pa.Super. 535, 421 A.2d 851 (1980) (wife did not know defendant's whereabouts; officer checked known "hangouts" and with employer and distributed photos).

The testimony at the instant Rule 1100 hearing indicates that the police made reasonable efforts given the information known by them. The officer explained that in August, 1980 he ascertained that appellee did not have a permanent address in the Germantown area that he could find. The officer believed that leaving the photos with the 14th District Squads was sufficient, given his lack of other information.

The officer knew appellee's mother's address but he also knew that appellee's mother had told her son not to return to her home. His mother had cooperated with the police and the officer could reasonably have believed that nothing more could be gained from repeated visits to her home. We will not conclude that the police failed to exercise due diligence simply because there were other options available to them.

Orders reversed and case remanded for trial.