J-S61024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KWAMAINE  WHITE, | : | |
| | : | |
| Appellant | : | No. 2994 EDA 2016 |

Appeal from the Judgment of Sentence May 23, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005889-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 19, 2019**

Kwamaine White appeals from the judgment of sentence of fifteen to forty years of imprisonment imposed following his convictions for robbery, conspiracy, simple assault, and theft by unlawful taking.  Specifically, Appellant claims the trial court erred in denying his motion to dismiss pursuant to Pa.R.Crim.P. 600.  Upon review, we vacate Appellant's judgment of sentence and remand for further proceedings.

Two men robbed Matthew McTeague at gunpoint on May 21, 2013, in Philadelphia County, forcing Mr. McTeague to drive them to an ATM to withdraw money from his account.  Appellant's fingerprints were recovered from Mr. McTeague's vehicle, and Mr. McTeague identified Appellant from a photo array.  On June 25, 2013, a criminal complaint was filed against Appellant and an arrest warrant issued.

In the meantime, Appellant had been arrested in an unrelated case, and was in custody at SCI-Graterford. Approximately one week later, Detective Timothy Tague of the Philadelphia Police Department's Northeast Detectives Division was assigned to bring Appellant to Philadelphia for processing in the instant case, and secured a writ of *habeas corpus* for that purpose. When Detective Tague contacted Graterford "maybe one or two months after [he] was handed the warrant package," he learned that Appellant had been transferred to SCI-Camp Hill. N.T. Rule 600 Hearing, 3/15/15, at 27.

As Detective Tague only executes arrest warrants on state prisoners when they are located at Graterford, he followed his procedure of contacting "a woman in Harrisburg" about having Appellant transferred back to Graterford and then obtaining a writ of *habeas corpus* to bring him to Philadelphia. *Id*. at 20. Detective Tague, whose primary responsibility is to serve warrants within the Northeast Division of Philadelphia on a daily basis, makes trips to Graterford once every three months, on average, and requests only six inmates for each trip, as he "only ha[s] one wagon, and we can't transport more than six at a time." *Id*. at 21. After contacting the state two more times after the initial call to Graterford, Detective Tague "eventually" arrested Appellant at Graterford on March 10, 2014, and brought him to Philadelphia. *Id*. at 21-22.

A preliminary hearing was scheduled for March 25, 2014, but the complainant was unavailable. The case was held for court following a hearing

on May 20, 2014, and Appellant was formally arraigned on June 10, 2014. At conferences held on July 9, 2014, July 22, 2014, and September 24, 2014, discovery was outstanding. Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600 on September 25, 2014. Therein he contended that the first trial listing of the case, for March 9, 2015, was 247 days late under the Rule, and that the Commonwealth had failed to exercise due diligence in arresting Appellant and providing discovery materials. The trial court denied Appellant's motion after a hearing on May 15, 2014. Trial was scheduled and continued on subsequent dates due to the request of the defense or the unavailability of the court, and eventually commenced on March 30, 2016.

Appellant was convicted and sentenced as indicated above. Appellant filed a timely post-sentence motion, which the trial court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following question for this Court's consideration: "Was not [A]ppellant's motion to dismiss pursuant to Pa.R.Crim.P. 600 improperly denied where [A]ppellant was tried long after the run date and the Commonwealth did not exercise due diligence throughout the case, as it failed to secure [A]ppellant's presence and failed to provide discovery in a timely manner?" Appellant's brief at 3.

We begin with a review of the applicable legal principles.

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion.

- 3 -

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Bethea*, 185 A.3d 364, 370 (Pa.Super. 2018) (cleaned up).

Pursuant to Rule 600, a defendant's trial must occur within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). That one-year-anniversary has been termed the "mechanical run date." *See*, *e.g.*,

- 4 -

*Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa.Super. 2007) (*en banc*). In calculating whether the trial commenced within the requisite time, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." Pa.R.Crim.P. 600(C)(1). However, "[a]ny other periods of delay shall be excluded from the computation." *Id*. The date arrived at after excluding such periods of delay has been termed the "adjusted run date."[1] *See Ramos*, *supra* at 1102.

The criminal complaint was filed in this case on June 25, 2013. Hence, the mechanical run date was June 25, 2014. Appellant's trial did not commence until March 30, 2016, when the jury was sworn. The trial court found that the Commonwealth exercised due diligence throughout the proceedings, meaning that none of the periods of delay was included in the computation, and trial commenced within the adjusted run date. *See* N.T. Rule 600 Hearing, 3/15/15, at 46.

On appeal, Appellant challenges the trial court's findings for the periods both before and after he was arrested. Specifically, Appellant contends that

---

[1] A prior version of Rule 600 was rescinded and a new version adopted in 2012, with an effective date of July 1, 2013. The new version discards distinctions of the prior rule between time that was "excusable" and that which was "excludable." However, the change in terminology does not affect the calculations in this case, and cases applying the prior rule are still applicable. *See* Pa.R.Crim.P. 600, *Comment* (*Computation of Time*).

the Commonwealth did not exercise due diligence in effectuating his arrest, and that post-arrest delays caused by the Commonwealth's failure to provide discovery and the unavailability of Mr. McTeague should not have been excluded from the computation. Appellant's brief at 6-7.

The first and largest single period of delay was that between the filing of the complaint on June 25, 2013, and Appellant's arrest on March 10, 2014. Such time is excluded from the Rule 600 calculation if police exercised due diligence in ascertaining the whereabouts of the defendant and apprehending him. *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa.Super. 2004) (*en banc*). "The Commonwealth has the burden of establishing by a preponderance of the evidence that it exercised due diligence throughout the prosecution." *Commonwealth v. McCarthy*, 180 A.3d 368, 375 (Pa.Super. 2018) (internal quotation marks omitted).

> In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. The actions must be judged by what was done, not by what was not done. In addition, the efforts need only be reasonable; lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive.

*Commonwealth v. Ingram*, 591 A.2d 734, 737 (Pa.Super. 1991).[2]

---

[2] For example, this Court discharged a defendant upon a speedy-trial violation based upon a five-month delay by Pittsburgh Police in arresting him, when the record showed that the police knew he had a criminal record but made no

In opposing Appellant's Rule 600 motion, the Commonwealth offered the testimony of Detective Tague concerning the efforts he made to execute the arrest warrant at Graterford. As detailed above, he waited one or two months after receiving the warrant before he attempted to arrest Appellant. Upon discovering that Appellant was no longer at Graterford, Detective Tague contacted a woman in Harrisburg, twice over the course of the next six or seven months, to seek Appellant's transfer back to Graterford, finally effectuating the arrest 258 days after the complaint was filed.

The trial court found that, through Detective Tague's testimony, the Commonwealth established due diligence. The trial court explicitly indicated that the Transportation Procedure for State Prisoners legislation ("the Act") was important to its finding. Trial Court Opinion, 1/23/18, at 9 n.10. The trial court cited that act in support of Detective Tague's assertion that "detectives at Northeast Detectives Division only bring defendants to the Criminal Justice center in Philadelphia from Graterford" and "sheriffs do not transport inmates from a state correctional institution in another county simply to have a defendant charged with a new case[.]" *Id*. at 8, 9. Rather, unless the inmate is to be transferred for a court appearance, the procedure

_____

effort to obtain information or cooperation from probation and parole offices in locating him, sought no cooperation from out-of-county police departments, and waited two months to contact the Philadelphia police after being informed by a parole officer and the defendant's mother that he could be found at a Philadelphia address. *Commonwealth v. Collis*, 404 A.2d 1320, 1323 (Pa.Super. 1979) (*en banc*).

of communicating a list of six inmates to his Harrisburg contact quarterly and transporting them back and forth from Graterford applies. *Id*.

The Act regarding inmate transfers provides as follows, in relevant part:

(1) The department shall temporarily transfer an inmate confined in the State correctional system to a State correctional institution determined by the department to be of an appropriate security level that is nearest to the location of **the judicial proceeding**. The department shall have the discretion to select an alternative and reasonably accessible State correctional institution if bed space limitations in the nearest State correctional institution prevent the temporary transfer to that institution.

(2) The department shall not be required to temporarily transfer any inmate under this subsection unless all of the following apply:

> (i) A court order has been entered directing the presence of the inmate **at a judicial proceeding**.
>
> (ii) The court has found that the inmate's presence is required **at the judicial proceeding**.
>
> (iii) The Constitution of the United States or the Constitution of Pennsylvania does not permit the inmate's testimony or participation **in the proceeding** to be conducted by videoconferencing technology.

(3) The department shall establish regulations for the implementation of this subsection in accordance with all of the following:

> (i) The regulations may require up to 14 days' notice prior to the entry of a temporary transfer order.
>
> (ii) The regulations may require return of an inmate to the inmate's home correctional institution upon completion of the judicial proceeding.
>
> (iii) The regulations may require that an inmate is to be removed from the State correctional institution by a government official authorized by the court directing the presence of the inmate **for a judicial proceeding** be

detained in the county prison if the inmate has been temporarily transferred more than twice in the preceding six months or the judicial proceeding is scheduled to last more than one week.

. . . .

(7) This section shall not be construed:

(i) To prohibit the use of alternative transportation methods authorized by law.

(ii) To authorize a court to designate a particular place of confinement or the length of confinement in the temporary correctional institution.

61 Pa.C.S. § 1151(d) (emphases added).[3]   The regulations established pursuant to subsection (3) provide as follows, in relevant part:

(a) A court may request that the Department of Corrections (Department) temporarily transfer a State inmate **for purposes of attending a judicial proceeding** by forwarding to the Department's Office of Population Management at least 14 days prior to the date of the judicial proceeding, an order that does the following:

(1) Determines that the Constitution of the United States or the Constitution of Pennsylvania does not permit the inmate's testimony or participation in **the judicial proceeding** to be conducted by videoconferencing technology and that the inmate's presence is required for **the judicial proceeding**.

(2) Directs that the inmate be returned to the institution from which he was temporarily transferred at the completion of **the judicial proceeding**.

_____

[3] The trial court indicated that the law was codified at 61 P.S. § 72. However, that statute was repealed in 2009. The current statute, quoted above, has been in effect since October 13, 2009.

(b) Upon receipt of an order under subsection (a), the Department will transfer the inmate to the State correctional institution nearest to the location of **the judicial proceeding** that the Department determines to be of an appropriate security level to house the inmate. The Department will select an alternate, reasonably accessible State correctional institution to which to transfer the inmate if bed space limitations at the nearest State correctional institution prevent the inmate's transfer to that institution.

37 Pa. Code § 96a.2. (emphases added).

Further, Philadelphia County has established a detailed procedure applicable to "writs issued and requests to transport any prisoner incarcerated in the Pennsylvania Department of Corrections." Temporary Procedure for State Prisoners, https://www.courts.phila.gov/pdf/criminal-reports/Act-82-protocol.pdf, at ¶ 1. The processes contained include the following:

2. Draft Bus List. Court Administration shall generate a draft Bus List in CPCMS for all defendants in state custody (including prisoners housed at SCI-Graterford, SCI-Cambridge Springs, and SCI-Muncy) **who have upcoming preliminary hearings, trials or sentencings for a particular week in Municipal Court or Common Pleas Court**. The draft bus list shall be generated 6 weeks ahead of the scheduled court date. The list shall constitute a preliminary list of defendants eligible for a temporary transfer pursuant to Act 82 of 2008. . . .

3. Sheriff Information. Court Administration shall simultaneously request from the Sheriff a list of all writs already issued for defendants and witnesses for the same week as the draft bus list.

4. Adding/Removing Prisoners from the Draft Bus List. Copies of the draft bus list and writ list shall be forwarded to the Director of the Criminal Justice Prison Population Unit, the District Attorney and Defender Association for review. Court Administration may implement procedures for adding or removing defendants or witnesses to the draft bus list pursuant to the request of judges, the Director of the Criminal Justice Prison Population Unit, the

- 10 -

District Attorney, the Defender, private defense counsel or other criminal justice stakeholders. Requests to add or remove defendants from the list shall be made by e-mail to the Director of the Criminal Justice Prison Population Unit, with a copy to Court Administration, the District Attorney, and the Defender.

. . . .

6. Review and Signature of Temporary Transfer Order/Notice. The Director of the Criminal Justice Prison Population Unit (in consultation with Court Administration and other criminal justice stakeholders) shall develop the final temporary transfer list and forward to Court Administration a draft "INMATE TEMPORARY TRANSFER ORDER AND NOTICE." This order and notice shall include a list of all defendants to be temporarily transferred, arranged in order of their respective inmate number, directing the Department of Corrections (DOC) to transfer the defendants to a nearby state correctional institution (usually SCI-Graterford for males and SCI-Muncy for females) **for their upcoming cases**. The Supervising Judge of Common Pleas Court and the President Judge of Municipal Court (or temporary designee) shall review the draft order/notice and, if appropriate, shall sign the order/notice on behalf of both Courts.

. . . .

9. Draft Writ. The Director of the Criminal Justice Prison Population Unit shall prepare a draft "Order and Writ of Transportation" writ for all of the defendants to be brought from SCI-Graterford or other designated SCI **each day**. No later than two business days prior to transportation/**court date**, the Director of the Criminal Justice Prison Population Unit shall forward the draft order/writ to Court Administration for review and any necessary modifications. Court Administration shall be provided the draft order/writ for review and signature of the designated judge or trial commissioner.

. . . .

13. Centralization of Writs. It is the intent of the Court to centralize the issuance of all writs and transportation orders relating to prisoners in the custody of the Department of Corrections. At the present time, writs may continue to be issued

by individual judges provided that they are issued at least 6 weeks **prior to the hearing date**, and copies of the writ are provided that same day to Court Administration and the Sheriff. Any other requests for writs for prisoners in the custody of the Department of Corrections that do not meet those requirements may be issued only by the Supervising Judge of Common Pleas Court (or designee) or the President Judge of Municipal Court (or designee). These provisions shall not apply to writs relating to prisoners in the Philadelphia Prison System, other county jails, or federal prisons.

*Id*. at ¶¶ 2-4, 6, 9, 13 (emphases added).

From the plain language of the above protocols, they apply to the transportation of inmates in the custody of the DOC to court for judicial proceedings. There is no indication that the policies establish the procedure for enabling Philadelphia Police to formally arrest an incarcerated defendant, an event that occurs before any judicial proceedings are scheduled. Further, Detective Tague's testimony that he forwards lists of inmates he seeks to arrest to someone in Harrisburg confirms that he did not follow the above procedures, which call for lists generated by Court Administration informed by lists of outstanding writs supplied by the Sheriff, in attempting to secure Appellant's presence at Graterford for the arrest. Accordingly, we must conclude that the trial court erred to the extent that it found these regulations "important in understanding why [it] found the Commonwealth exercised due diligence." Trial Court Opinion, 1/23/18, at 9 n.10.

Nonetheless, for Rule 600 purposes, administrative failures by the state prison or the court causing the failure to transfer a prisoner are not attributable to the Commonwealth. *See Commonwealth v. Thompson*

("***Thompson I***"), 93 A.3d 478, 489 n.1 (Pa.Super. 2014). However, the Commonwealth must establish that it took the appropriate steps to attempt to secure the prisoner's presence. ***Id***. Whether the record evidences such efforts may make the difference in the due diligence determination. ***Compare Commonwealth v. Mines***, 797 A.2d 963, 965 (Pa.Super. 2002) (affirming finding of due diligence where a writ had been prepared but was cancelled because no beds were available in the Philadelphia prison system), ***with Commonwealth v. Thompson*** ("***Thompson II***"), 136 A.3d 178, 183 (Pa.Super. 2016) (holding the Commonwealth failed to establish due diligence where there was no evidence that a writ was ever requested).

Although we conclude that the trial court erred in this case in relying upon inapplicable regulations to support a finding of due diligence, we are unable to make our own determination from the record before us. For example, while the transcript from the Rule 600 hearing indicates that the records of the court clerk and other documents were admitted into evidence, ***see*** N.T. Rule 600 Hearing, 3/15/15, at 36, they are not included in the certified record. As such, we cannot determine what the administrative records show regarding the issuance of writs or orders to secure Appellant for arrest.

Moreover, without the complete record, we are unable to examine Appellant's claims as to the second group of delays at issue. Appellant argues that post-arrest delays in commencing trial were caused by the

Commonwealth's failure to provide discovery, and no delays were attributable to him. Appellant's brief at 21-24. However, the Commonwealth indicates that some requested discovery did not exist and that a subpoena was issued to comply with other requests, and the trial court states that Appellant executed Rule 600 waivers for some of the time periods at issue. **See** Commonwealth's brief at 12-14; Trial Court Opinion, 1/23/18, at 11. We are unable to review the trial court's resolution of these issues without examining the record before it at the Rule 600 hearing.

Hence, we cannot ascertain from the record that the trial court's finding that the Commonwealth exercised due diligence in bringing Appellant to trial was justified. It was the Commonwealth's burden to prove due diligence. **McCarthy**, **supra** at 375. Yet it was Appellant's duty to ensure that the certified record included all items necessary for our review. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*). However, if the absence from the record of documents that obviously exist is caused by an omission of court personnel, this Court will not deny an appellant review of the merits of his claim. **Id**. at 8. We simply cannot determine at this stage whose compliance was deficient.

> In these circumstances, we conclude that the most prudent course of action is to remand this matter for a hearing for further consideration of the [Commonwealth's diligence in arresting Appellant]. If it is adequately demonstrated by the Commonwealth that [it took the steps necessary under applicable law to arrest Appellant while he was in the custody of the DOC], no further inquiry is required, . . . the trial court should leave untouched its holding that no Rule 600 violation occurred[, and it

should reimpose Appellant's judgment of sentence]. If the Commonwealth cannot provide evidence that [it followed the applicable procedures to arrest Appellant while he was in DOC custody], the trial court should then determine whether Appellant was tried within the time period prescribed by Rule 600. If he was not tried within the prescribed time period, the trial court should then determine whether the Commonwealth acted with due diligence [and/or whether the delay in trying] Appellant was completely beyond the Commonwealth's control.

**Thompson I**, **supra** at 489. If the Commonwealth cannot establish compliance with Rule 600, the trial court must grant Appellant's motion and discharge him.[4]

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/19

---

[4] The hearing upon remand is limited to the time period between the filing of the complaint and Appellant's arrest. As discussed above, we have declined to address the merits of Appellant's arguments as to the exclusion of post-arrest delays. Should the trial court deny Appellant's Rule 600 motion after the hearing following remand, and Appellant decides to appeal that ruling, he may, upon securing a complete record for this Court's review, challenge the trial court's rulings as to both periods of delay in the subsequent appeal.